**Tyrone F. DADE, Appellant,**

**v.**

**UNITED STATES of America,**
**Appellee.**

**No. 20712.**

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 4, 1967.

Decided Dec. 24, 1968.

Petition for Rehearing Denied
Feb. 5, 1969.

Mr. Warren E. Baker, Washington, D. C. (appointed by this court), for appellant.

Mr. Allan M. Palmer, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and A. Lee Fentress, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before Bazelon, Chief Judge, and Prettyman, Senior Circuit Judge and Burger, Circuit Judge.

---

**82.** *E. g.*, National Broadcasting Co. v. FCC, *supra* note 56, 124 U.S.App.D.C. at 125– 126, 362 F.2d at 955–956, quoted in text *supra* at note 57.

BURGER, Circuit Judge:

This appeal results from a conviction of carnal knowledge. 22 D.C.Code § 2801 (1967). The sole issue on appeal concerns the requisite corroboration of the prosecutrix' identification of Appellant as the individual who attacked her.[1]

At approximately 8:30 P.M. on December 28, 1965 the complaining witness and her brother were returning from a neighborhood laundry when the girl's attention was drawn to a "strange man" about a half a block away.[2] She called her brother's attention to the man, later identified as the Appellant, and he subsequently passed the girl and her brother on the sidewalk at a distance of a few feet.

Soon thereafter, the girl returned to the drugstore to purchase ice cream and a book. Again she observed the same man further down the street. As she was returning home, the man accosted her asking for change for a dime. When she ignored him and tried to proceed on, she testified that he grabbed her around the neck, dragged her down an alley and into a garage where he raped her. She testified that at the time of the attack she was able to get a look at the individual. When the man left the garage she ran home and informed her parents and brother of the incident. They immediately returned to the scene with her, where they found the police already present.

Three days after the attack the victim and her brother went to police headquarters where they supplied the police with a description of the assailant. This description formed the basis of a composite drawing of the alleged attacker. Approximately three months later, during March 1966, Appellant was arrested on another charge. At this time, Officer DeMilt, who was in charge of the rape case and had been present at the formulation of the composite drawing, thought he recognized Appellant from the composite and confronted him with it.

On the following day the police arranged for the girl and her mother to be present in the Court of General Sessions when Appellant was being charged with the other crime. The girl testified that she identified Appellant as he sat with a group of three or more men behind a railing in the courtroom; on cross-examination she testified that she was not sure of the identification at first but confirmed it when the police officer with her brought her up to within a foot or two of the several men sitting together, including Appellant. The mother testified that her attention was drawn to Appellant because he was "staring" at her daughter and that at no time prior to the actual identification did the police point Appellant out to her daughter. This testimony was corroborated by the officer who accompanied the girl and her mother to the courtroom. Thereafter the girl again identified Appellant at the preliminary hearing on the instant charge.

A final identification of the assailant was made by the girl's brother three months later in June 1966. At this time, the brother selected Appellant's photograph from a group of photographs given to him at police headquarters. He testified that no particular photograph was called to his attention but that he singled out Appellant's photograph from the stack offered to him.

Appellant testified in his own behalf at trial and claimed that, while he had

1. Because this case also involves a pretrial identification of the Appellant by the complaining witness, its final disposition was arrested in anticipation of the recent consolidated opinion by this Court in Clemons, Clark & Hines v. United States, 133 U.S.App.D.C. —, 408 F.2d 1230 (Dec. 6, 1968). Applying the guidelines set forth in that opinion, we conclude that the introduction of prosecutrix' pre-trial, and subsequent in-trial identification testimony was not error. *See* discussion *infra*.

2. Her attention was evidently captured by Appellant's unusually long hair that was "sticking up from under his cap." She also noted that he wore a jacket with "tight sleeves," and that he was "pacing a little bit to keep warm."

an apartment which overlooked the scene of the crime, he was not the individual involved in the assault. He further testified that until the confrontation in the General Sessions courtroom he had never seen the girl before and that he was staring at her only because it appeared as though the girl and the police officer were discussing him. At trial, the girl identified Appellant as her assailant and as the man that she and her brother had seen earlier on the evening of the incident, her brother identified Appellant as the man he and his sister had encountered on the street that evening, and the girl's mother testified that Appellant was the individual whom her daughter had identified in the General Sessions courtroom.

■ The only ground on which Appellant seeks reversal is that there was inadequate corroboration of the victim's identification. On the basis of the facts recited we hold there was ample corroboration of the identification to warrant the jury to reach the conclusion of guilt. *See* Thomas v. United States, 128 U.S. App.D.C. 233, 387 F.2d 191, 87 L.Ed. 1167 (1967); Franklin v. United States, 117 U.S.App.D.C. 331, 330 F.2d 205 (1964); Walker v. United States, 96 U.S.App.D.C. 148, 223 F.2d 613 (1955); Ewing v. United States, 77 U.S.App. D.C. 14, 135 F.2d 633 (1942), cert. denied, 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145 (1943); Kidwell v. United States, 38 App.D.C. 566 (1912).

■ Because the prosecutrix made an in-court identification of Appellant and both she and her mother testified to her pre-trial identification at the Court of General Sessions, the constitutional validity of the pre-trial and in-court identifications becomes critical under recent Supreme Court holdings.[3] This point was not raised or briefed by Appellant's counsel on oral argument, nor was it pursued in response to questions proffered by this Court. Nevertheless, our examination of the record convinces us that the proceedings in this case transgress none of the recently articulated constitutional guidelines for the admission of identification testimony.[4]

■ Initially, we note that the March 26, 1966 General Sessions identification was not invalidated by the absence of counsel, for the Sixth Amendment right to counsel recognized in *Wade* and *Gilbert, supra,* was given only prospective effect in *Stovall, supra.* Therefore any infirmity in the procedure utilized here must be based on the independent ground that the pre-trial confrontation "was so unnecessarily suggestive and conducive to irreparable mistaken identification that [Appellant] was denied due process of law." *Stovall, supra,* 388 U.S. at 302, 87 S.Ct. at 1972. Using this standard as reiterated and clarified in our recent *Clemons* opinion,[5] the General Sessions confrontation did not violate due process. The prosecutrix was not presented with a one-man "showup", she was not guided

3. As to the in-court identification by the victim's brother, we conclude that the ample opportunity he had to view Appellant on the street, the lack of guidance offered by the police in attendance at the time he selected Appellant's photograph from a group of photos, and the effectiveness of his assistance in preparing a composite drawing which subsequently assisted the police in identifying Appellant, confirm that the brother was not subjected to an unnecessarily suggestive identification procedure and that his in-court identification "leave[s] little room for doubt that the identification of [Appellant] was correct." Simmons v. United States, 390 U.S. 377, 385–386, 88 S.Ct. 967, 972, 19 L.Ed.2d 1247 (1968).

4. *See* Biggers v. Tennessee, 390 U.S. 404, 88 S.Ct. 979, 19 L.Ed.2d 1267 (1968); Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Clemons, Clark & Hines v. United States, 133 U.S. App.D.C. ——, 408 F.2d 1230 (Dec. 6, 1968).

5. The discussion in *Clemons supra,* 133 U. S.App.D.C. at ——, 408 F.2d at 1244, 1245, and n. 16, is particularly helpful in evaluating the total context of the victim's pre-trial identification here.

 

in her selection of Appellant, she had an opportunity to observe him both before and during the attack,[6] and she participated in the preparation of a composite drawing which proved to be accurate enough to lead to the police's initial focus on Appellant.

Given the validity of the pre-trial confrontation at General Sessions, we need not pursue any question with regard to the propriety of its use as evidence at trial or its possible "taint" of the in-court identifications.

Affirmed.

BAZELON, Chief Judge (concurring):

Although I find the questions presented by this case very close on the score of both the required corroboration as to identity and the propriety of the pre-trial identification, on the facts presented I concur in affirming the conviction.

The police practice of allowing witnesses and victims of crimes to identify suspects in the unstructured, largely unreviewable surroundings of the Court of General Sessions could certainly not be tolerated after Wade v. United States, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). As this Court pointed out in Clemons v. United States, 133 U.S. App.D.C. ——, ——, 408 F.2d 1230, 1240 (1968).

It must be evident * * * that the conditions of such a confrontation are much harder to control than those of a formal lineup, and that it is also much more difficult to establish by clear and undisputed testimony exactly what these conditions were. It is, at the least, a practice fraught with perils to a degree suggesting its sparing use as the part of prudence.

The pre-trial identification here, however, occurred before the police were freshly placed on notice by *Wade* of the need for scrupulous fairness in arranging

such confrontations. Although there is no suggestion in the record why a lineup was not possible, and why in fact a lineup was not held, the identification procedure employed here does not, on the record, seem to have been unnecessarily suggestive in other respects.

---

6. Not only did she have an opportunity to see Appellant before the attack, she specifically noticed and called attention to some of his individual and distinguishing characteristics. *See* note 2 *supra.*

Moreover, these particular impressions were formed before there was any interaction between the witness and the Appellant which might enhance the probabilities of mistaken identification.