**Albert L. HAWKINS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 21997.**

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 19, 1969.

Decided July 9, 1969.

Mr. Peter C. Jenkins, Washington, D. C., with whom Mr. William W. Greenhalgh, Washington, D. C. (both appointed by this court) was on the brief, for appellant.

Mr. John G. Gill, Jr., Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., at the time the brief was filed, and Frank Q. Nebeker, Asst. U. S. Atty., at the time the brief was filed, and Scott R. Schoenfeld, Asst. U. S. Atty., were on the brief, for appellee.

Before PRETTYMAN, Senior Circuit Judge, and McGOWAN and ROBINSON, Circuit Judges.

PER CURIAM:

In the early morning hours of October 15, 1967, three men staged an armed holdup at a tourist home and effected a successful getaway. Less than two days later, however, at 12:30 a. m. on October 17, the police arrested appellant

---

6. As a last resort the issue may be raised as a defense in any future patent infringement action.

and one Robert Young after another robbery. They were taken to a stationhouse where shortly thereafter they were viewed by Richard Bullock, the night clerk at the tourist home, without benefit either of a lineup or counsel. Bullock cleared Young but implicated appellant, and a jury found him guilty of robbery [1] and assault with a dangerous weapon.[2] On this appeal, he contends that the trial judge erred in admitting an in-court identification by Bullock.[3] We affirm.

On Bullock's direct examination, the Government initiated the in-court identification but avoided mention of the stationhouse confrontation. To this defense counsel [4] made no objection but, in the midst of cross-examining Bullock, approached the bench and stated that he desired to explore the pretrial confrontation in an effort to demonstrate that the in-court identification was unreliable. The trial judge, with the jury absent, conducted a hearing and thereafter informed defense counsel that he could go into that confrontation if he wished.[5] Although never explicating his rationale, the trial judge appears to have decided, in the process of dealing with defense counsel's request, that the stationhouse showup violated *Wade-Gilbert* [6] requirements relative to the presence of counsel for an accused at pretrial identification undertakings. Argument here proceeded on that assumption, and we agree that the conclusion so assumed was inevitable.[7]

The consequences of a *Wade-Gilbert* violation are two-fold. The Government may not introduce the illegal pretrial identification against the accused.[8] Nor may the Government initiate an in-court identification unless it establishes that the in-court identification proceeded from a source independent of the prior illegal confrontation.[9] Since Bullock's in-court identification was allowed to stand, we might infer that the trial judge found that it had an independent source. In any event, we are at liberty to decide that question ourselves where the record is adequate,[10] and here we have a full record, much benefited by the trial judge's careful questioning along the guidelines suggested in *Wade*.[11]

Given the illegal showup at the stationhouse, it became incumbent upon the Government to establish by "clear and convincing evidence that the in-court [identification was] based upon observations of the suspect other than the [illegal] identification." [12] This required considerably more than a showing that the observations provided ample foundation upon which the witness, absent the

---

1. D.C.Code § 22–2901 (1967 ed.), since amended (Supp. II 1969).

2. D.C.Code § 22–502 (1967 ed.). The jury acquitted appellant on another count of assault growing out of the same incident.

3. Appellant also argues that the courtroom identification was the product of an illegal detention. Obviously, our conclusion that the identification had an independent source negates this argument.

4. Not his counsel on appeal.

5. See, *e. g.*, Clemons v. United States, 133 U.S.App.D.C. 27, 34, 408 F.2d 1230, 1237 (*en banc* 1968), cert. denied 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969).

6. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

7. See the cases cited *supra* note 6. See also Russell v. United States, 133 U.S. App.D.C. 77, 408 F.2d 1280, cert. denied 395 U.S. 928, 89 S.Ct. 1786, 23 L. Ed.2d 245 (1969).

8. *E. g.*, Gilbert v. California, *supra* note 6, 388 U.S. at 272–274, 87 S.Ct. 1951.

9. *Id.*, at 272, 87 S.Ct. 1951; United States v. Wade, *supra* note 6, 388 U.S. at 240–241, 87 S.Ct. 1926; Clemons v. United States, *supra* note 5, 133 U.S.App.D.C. at 34, 408 F.2d at 1237.

10. Clemons v. United States, *supra* note 5, 133 U.S.App.D.C. at 46, 408 F.2d at 1249; Williams v. United States, 133 U.S.App.D.C. 185, 409 F.2d 471 (1969).

11. See United States v. Wade, *supra* note 6, 388 U.S. at 241, 87 S.Ct. 1926.

12. *Id.* at 240, 87 S.Ct. at 1939.

illegal confrontation, could make an identification.[13] What was required was a demonstration that the in-court identification proceeded from an independent source, and for a determination on that score *Wade* provides a partial list of the factors to be considered:

the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any prelineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification.[14]

Applying those factors to the case at hand, we find that Bullock had an excellent opportunity to scrutinize his assailants and apparently he used it well. The showup took place within 48 hours after the robbery occurred. Bullock testified that the first robber who entered the tourist home, now said to be appellant, was there alone for about three minutes before the second arrived, and that the third did not appear for another four minutes; in all, Bullock was able to view the first arrival in a well-lit room for some ten minutes. Bullock also testified that he paid particular attention to the first robber, and this is borne out by the descriptions given the police. That of the first was considerably more detailed than those of the other two, and even appellant admits that Bullock gave "a fairly accurate description of Albert Hawkins." [15]

Of course, we can never know precisely what mental image of the holdup men Bullock had before he came to the stationhouse, but we think the Government produced clear and convincing evidence of a source for the in-court identification arising independently of the illegal confrontation.[16] Yet, the proof in that respect was not so abundant that we may ignore the possibility that a highly suggestive confrontation could have distorted the mental image Bullock originally formed.[17] According to Bullock and the police officers testifying at the trial, the showup took place in a squad room in the stationhouse. Besides appellant and his companion, there were approximately ten men in the room, most of whom were Negroes, as are the two suspects. Bullock apparently had no difficulty in recognizing these ten men as policemen because some were in uniform and the others wore holsters, and all but the suspects wore ties. Moreover, Bullock testified that he was told beforehand that the two suspects had been arrested for the holdup of another tourist home. Bullock and the officer-witnesses stated that Young was standing and appellant was sitting, while appellant insisted that he was asked to stand. But, under either version of the facts, there was a two-man showup before a potential witness who knew that the police thought that both men could well have been partici-

---

13. *Id.* at 241, 87 S.Ct. 1926; Clemons v. United States, *supra* note 5, 133 U.S. App.D.C. at 38, 43, 47, 408 F.2d at 1241, 1246, 1250; Williams v. United States, *supra* note 10, 133 U.S.App.D.C. at 187, 409 F.2d at 473.

14. United States v. Wade, *supra* note 6, 388 U.S. at 241, 87 S.Ct. at 1940.

15. Bullock's failure to identify any of the robbers from some 100 photographs shown him by the police neither adds to nor subtracts from the proof of independent source since it is not known whether appellant's picture was among them. Williams v. United States, *supra* note 10, 133 U.S.App.D.C. at 187, 409 F.2d at 473.

16. Compare the cases cited *supra* note 13.

17. United States v. Wade, *supra* note 6, 388 U.S. at 241, 87 S.Ct. 1926. Compare Clemons v. United States, *supra* note 5, 408 F.2d at 1250; Williams v. United States, *supra* note 10, 133 U.S.App.D.C. at 187, 409 F.2d at 473. Bullock asserted that he was sure of his identification at trial, quite apart from his opportunity to see appellant at the showup. As the trial judge did not make explicit his ruling on independent source, we are unwilling to place any weight on his claim. See Clemons v. United States, *supra* note 5, 133 U.S.App.D.C. at 39, 408 F. 2d at 1242.

pants in the crime. On the other side of the ledger is the absence of evidence of other circumstances that could have made the showup all the more suggestive. We are not, for instance, told that the police officers said they were sure of the suspects' guilt, that the suspects were manacled, that Bullock was in a highly distraught state of mind, or that the officers tried to persuade Bullock that these were the men.[18]

On the whole evidence, we think that the independent source of Bullock's in-court identification was sufficiently potent to withstand the influence of the illegal and suggestive confrontation at the stationhouse. In past decisions, we have found an independent source in situations where the circumstances of the confrontation were, if anything, more suggestive than here[19] or unknown.[20] True it is that in some of those cases the witness had identified the accused from a photograph before the illegal confrontation.[21] That factor is lacking here, but is compensated for, to some extent, by the relatively short period of time elapsing between the crime and the confrontation. Here the time span was less than two days whereas in other cases it was at least several weeks.[22] And despite suggestivity in the confrontation in this case, Bullock "did show a capacity to discriminate between those exhibited to" him,[23] identifying appellant and clearing Young.

Since we rest our decision on the ground that there was an independent source for Bullock's in-court identification, we need not consider the Government's contention that appellant's failure to object to that identification at trial amounted to a waiver. We note in passing, however, that the Government's chief supporting argument is that defense counsel made a "tactical election" to "embrace[ ] the pre-trial identification" because he "saw in the defective identification procedure, not prejudice but opportunity." Given Bullock's in-court identification as the sole link between appellant and the offenses, the Government's characterization of defense counsel's failure to object to its introduction as a "tactical election" must rest upon the unstated premise that an accused cannot both object to the initiation of an in-court identification and, if he loses, then attack its reliability. This premise is false.[24] In any event, where there is doubt as to the propriety of an in-court identification, the administration of justice is more efficiently served by a hearing on the subject before the identification is undertaken in the presence of the jury.

Affirmed.

PRETTYMAN, Senior Circuit Judge:

I concur, but I regret that the matter is given so elaborate treatment. We have a simple case. An unbiased adult,

---

18. Nor is it suggested that the identification at the stationhouse was hesitant. Compare Cunningham v. United States, 133 U.S.App.D.C. 133, 134, 409 F.2d 168, 169 (1969). We do not attribute much weight to the absence of such circumstances since counsel's presence is required at confrontations partly because "the accused's inability effectively to reconstruct at trial any unfairness that occurred at the lineup may deprive him of his only opportunity meaningfully to attack the credibility of the witness' courtroom identification." United States v. Wade, supra note 6, 388 U.S. at 231–232, 87 S.Ct. at 1934–1935.

19. Clemons v. United States, supra note 5, 133 U.S.App.D.C. at 38, 47, 408 F.2d at 1241, 1250; Frazier v. United States, 136 U.S.App.D.C. ——, 419 F.2d 1161 (March 14, 1969).

20. Williams v. United States, supra note 10, 133 U.S.App.D.C. at 187, 409 F.2d at 473.

21. See note 19, supra.

22. See the cases cited supra note 19–20.

23. Cunningham v. United States, supra note 18, 133 U.S.App.D.C. at 135, 409 F. 2d at 170.

24. Clemons v. United States, supra note 5, 133 U.S.App.D.C. at 34, 409 F.2d at 1237.

in full possession of all his faculties and in a well-lighted place, watched for about ten minutes a robbery being committed. Thereafter this witness, without hesitation or doubt, identified one of the robbers. That he made the same identification of the same robber with the same certainty twice instead of only once seems to me to be a simplifying factor rather than a complicating one. The court puts this material through a complex process of consideration. I regret the treatment, because I believe it confuses and unnecessarily burdens busy prosecutors and trial judges.