UNITED STATES of America

v.

Edward KEMPER, a/k/a Elwood Kemper, Appellant.

UNITED STATES of America

v.

Joseph N. RICHARDSON, Appellant.

Nos. 22558, 22559.

United States Court of Appeals, District of Columbia Circuit.

Argued June 13, 1969.

Decided July 10, 1970.

Mr. Richard R. Sigmon, Washington, D. C. (appointed by this court) for appellants.

Mr. Sandor Frankel, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., at the time the brief was filed, Frank Q. Nebeker, Asst. U. S. Atty., at the time the brief was filed, and Nicholas S. Nunzio, Asst. U. S. Atty., were on the brief, for appellee. Messrs. Thomas A. Flannery, U. S. Atty., and Roger E. Zuckerman, Asst. U. S. Atty., also entered appearances for appellee.

Before BAZELON, Chief Judge, and TAMM and ROBINSON, Circuit Judges.

PER CURIAM:

These are appeals from convictions, after trial by a jury, of two of five alleged participants in the holdup of a grocery store. Appellant Kemper was found guilty of robbery,[1] and appellant Richardson of armed robbery,[2] robbery,[3] and assault with a dangerous weapon.[4] Richardson seeks reversal on the ground that the trial judge erred in permitting his intrial identification by a witness with whom there had been a pretrial confrontation lacking in due process.[5] Kemper contends that his conviction—for aiding and abetting the commission of the hold-

---

1. D.C.Code § 22–3202 (1967).

2. Id. § 22–2901.

3. Id. § 3202.

4. Id. § 22–502.

5. See also note 16, infra.

up—falls with that of Richardson, an alleged principal, because the latter's in-court identification served as an evidentiary link tying Kemper to the crime. We affirm the convictions on all counts.

### I

On a cold January morning, two men entered a Safeway store and, after a short period, one approached the manager, Dennis R. Bailey, at a cash register. The man asked for cigarettes and, as Bailey handed him the cigarettes, the second man approached with a drawn gun. The men took the money in the cash register and ordered Bailey to open a safe; after he complied, they helped themselves to the money inside. They then escorted Bailey toward an exit, but he managed to break away, and the two men ran from the store.

Bailey fetched the assistant manager, Keith D. Soltes, from the rear of the store in time for him to see the robbers approach a Ford parked across the street. Evidently realizing that they were being observed, they did not enter the car, but continued away on foot. The Ford also departed, chased by Soltes and a customer who wrote down its license number and was stopped a few minutes later by a police cruiser. The vehicle was owned by its then driver, Earl Brooks,[6] and Kemper was the only other occupant. Another man, Jerry Burke, was arrested a short distance from the store, and still another, Clifton Bullock, was apprehended somewhat later.[7]

Within ten minutes after the holdup, police officers arrived at the store, and Bailey gave them descriptions of the men who had accosted him. He could not describe anyone else, and Soltes was unable to describe anyone at all. Two suspects were presented to Bailey at the store, but he stated that he did not recognize either.

At about the same time, another police officer, responding to a complaint of a housebreaking, came across Richardson in an apartment building located near the store. He was wearing only a sleeveless shirt and slacks, although it was a cold day, and the party he claimed to be looking for did not live in the building. Richardson accompanied the officer to a stationhouse,[8] and there Brooks identified him as one of the participants in the holdup.[9]

The police then returned to the apartment building where Richardson had been found and recovered from an incinerator a hat and a raincoat fitting the description of apparel worn by one of the bandits. In a pocket of the raincoat was $92, including part of a torn dollar bill which matched another part Soltes found in the store's cash register. In the pocket was also a package of cigarettes, of the brand requested in the store, on which Safeway's special identifying number was stamped.

About an hour after the holdup, Bailey and Soltes came to the stationhouse, and Bailey again described his assailants. They were ushered into a room, wherein Richardson and the other three arrestees were, to ascertain whether Bailey could make an identification. All four wore the clothing in which they had been arrested, which included coats for all but Richardson, who remained in the sleeveless shirt and slacks. Bailey looked at the four but did not identify anyone;[10]

---

6. Brooks promptly confessed to participation in the holdup, stating that he remained in the car throughout. He implicated appellants and the others named in text.

7. Testimony at trial blamed Bullock as the gunman, and cited Burke as one who was in the Ford but left before the store was entered. See note 13, *infra*.

8. Apparently he did so voluntarily. In any event, no issue in that regard is raised.

9. There is no indication that the officer suspected Richardson of complicity in the holdup until he was identified by Brooks at the stationhouse.

10. Bailey testified that he did not then undertake an identification because he "wanted to make sure before I identified anyone." The police officer conducting the confrontation testified that Bailey said that "he was almost sure the little fellow

he stepped out of the room and returned shortly to look at them again. Richardson then wore the hat and raincoat which had been retrieved from the incinerator at the apartment building. This time Bailey identified Richardson as the first of the two men who had converged upon him in the store.

At some point prior to this identification—the record leaves uncertain just when—Bailey was shown the raincoat found in the apartment building,[11] and he acknowledged that it was similar to that worn by the robber who first approached him. He was also shown the torn dollar bill found in the pocket of the raincoat, and in his presence Soltes connected it with the remnant left in the cash register. So it was that when the last confrontation occurred, Bailey could have believed that the police had in custody the person from whom those items had been removed. Moreover, the identification was made when Richardson, initially the only coatless member of the group, was garbed in the incriminating raincoat.

Richardson, Kemper and Burke were tried jointly.[12] Burke was acquitted on all counts.[13] As the offenses occurred after the decisions in United States v. Wade[14] and Gilbert v. California,[15] the requirement that the criminally accused be afforded the right to counsel at lineups was fully applicable. Since Richardson was without benefit of counsel when the stationhouse confrontation occurred, the trial judge conducted a hearing, in the absence of the jury, at which its legality was comprehensively explored. The judge ruled that Richardson had knowingly waived his right to counsel,[16] but that the confrontation was so unduly suggestive as to amount, under the doctrine enunciated in Stovall v. Denno,[17] to a denial of due process of law.

This ruling, of course, precluded the Government from presenting evidence of Bailey's identification of Richardson at the stationhouse.[18] It was, however, accompanied by a finding "that Mr. Bailey's identification had sufficient independent origin as to permit his present in-court identification of [Richardson]." With the jury recalled, Bailey was permitted to identify Richardson from the witness stand as a member of the robbery team and, as we have stated, it is this that both appellants now question. Thereafter, defense counsel, on cross-examination, went into the details of the

in the tee shirt [Richardson] was one of the men who came in the store, but he couldn't be sure, because he wasn't dressed the same way."

11. Bailey's testimony suggests that this occurred before either of the two stationhouse viewings. Other testimony indicates, however, that the garments found at the apartment building did not arrive at the stationhouse until after the first viewing.

12. The trial of Bullock, charged as the gunman in the robbery, was severed. The charges against Brooks were dropped, and he testified as a witness for the Government at appellants' trial.

13. Burke admitted at trial that he had been in the Ford, but stated that he left the group before the holdup took place.

14. 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

15. 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

16. This ruling is also questioned, but we need not and do not consider it. The judge's holding that there was a due process violation gave Richardson all the relief that he could have obtained by a favorable determination on right to counsel. The Government was barred from introducing any evidence concerning the stationhouse confrontation, leaving as the only remaining inquiry the adequacy of an independent source for an in-court identification. If, as the trial judge held, the Government discharged its burden on the latter issue, the right to counsel violation, like the due process violation, was dissipated. See text *infra* at note 22. Consequently, only if we reversed the trial judge's ruling on due process would the right to counsel point become vital, and in light of our disposition of these appeals, no relief could be granted appellants were we to separately consider that point.

17. 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

18. See the cases cited *infra* note 21.

stationhouse confrontation,[19] including Bailey's failure to identify Richardson the first time he saw him there. As we have said, the jury convicted.

## II

■■■ *Stovall* recognized that an identification confrontation may be "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the accused is] denied due process of law."[20] The trial judge felt that the two-stage confrontation between Bailey and Richardson at the stationhouse was of that character, barring testimonial reference to the identification ensuing there,[21] and we have no reason to doubt

the correctness of those conclusions.[22] Nonetheless, Bailey's in-trial identification of Richardson was not foreclosed thereby if the Government "establish[ed] by clear and convincing evidence that the in-court identification[] [would be] based upon observations of the suspect other than the [stationhouse] identification."[23] The trial judge so held,[24] and we think the record, analyzed for factors that might meet that requirement,[25] adequately supports the judge's determination.

During the course of the holdup, Bailey had a good opportunity to scrutinize the two men who partook of the contents of the cash register and safe.[26] He con-

19. See Clemons v. United States, 133 U.S. App.D.C. 27, 34, 408 F.2d 1230, 1237 (*en banc* 1968), cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969).

20. 388 U.S. at 302, 87 S.Ct. at 1972. See also Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Biggers v. Tennessee, 390 U.S. 404, 88 S.Ct. 979, 19 L.Ed.2d 1267 (1968) (dissenting opinion).

21. See Gilbert v. California, *supra* note 15, 388 U.S. at 272–273, 87 S.Ct. 1951. See also Clemons v. United States, *supra* note 19, 133 U.S.App.D.C. at 45, 408 F.2d at 1248.

22. Compare, *e. g.*, Clemons v. United States, *supra* note 19, 133 U.S.App.D.C. at 42–43, 44, 46–47, 408 F.2d at 1245–1246, 1247, 1249–1250; Hawkins v. United States, 137 U.S.App.D.C. 103, 105–06, 420 F.2d 1306, 1308–1309 (1969); Mendoza-Acosta v. United States, 133 U.S. App.D.C. 91, 92, 408 F.2d 1294, 1295 (1969). See also Gregory v. United States, 133 U.S.App.D.C. 317, 321–322, 410 F.2d 1016, 1020–1021 (1969).

23. United States v. Wade, *supra* note 14, 388 U.S. at 240, 87 S.Ct. at 1939. Our decisions have given this doctrine parallel operation where the confrontation involves a due process violation. E. g., Clemons v. United States, *supra* note 19, 133 U.S. App.D.C. at 34, 408 F.2d at 1237.

24. Ruling orally that there was an independent source permitting Bailey's in-court identification of Richardson, see text *supra* after note 18, the trial judge cited only the amplitude of Bailey's opportunity to observe the two men who

came into the store. Such an opportunity was, of course, a *sine qua non* of any attempted in-trial identification. Hawkins v. United States, *supra* note 22, 137 U.S. App.D.C. at 104, 420 F.2d at 1307, and is a factor bearing vitally on independent source. See cases cited *infra* notes 26–28. Its sufficiency *alone* to sustain a finding of independent source is a very different question, Hawkins v. United States, *supra*, 137 U.S.App.D.C. at 104–05, 420 F.2d at 1307–1308—one we need not face in this case. We do not feel justified in assuming that just because the judge enunciated but one circumstance supporting his finding he did not consider others equally at his command. And since, in any event, we ourselves can make the determination on independent source where the record is ample for the purpose, see Clemons v. United States, *supra* note 19, 133 U.S.App.D.C. at 45–46, 408 F.2d at 1248–1249; Hawkins v. United States, *supra*, 137 U.S.App.D.C. at 104, 420 F.2d at 1307; Williams v. United States, 133 U.S.App.D.C. 185, 187, 409 F.2d 471, 473 (1969); Cunningham v. United States, 133 U.S.App.D.C. 133, 134–135, 409 F.2d 168, 169–170 (1969), we may with equal facility review the record to see whether it discloses facts which, in conjunction with those identified by a trial judge, suffice to support a finding of an independent source for an in-court identification.

25. See United States v. Wade, *supra* note 14, 388 U.S. at 241, 87 S.Ct. 1926, for a partial listing. Our decisions have isolated additional factors. See cases cited in subsequent notes.

26. Compare United States v. Wade, *supra* note 14, 388 U.S. at 241, 87 S.Ct. 1926; Clemons v. United States, *supra* note 19,

fronted them under excellent lighting conditions [27*] over a period of approximately ten minutes,[28] and at times was no more than two feet from them. Equally important, the circumstances of record indicate strongly that Bailey was receptive to the stimuli that opportunity provided. Speaking of the man who first approached him in the store, later identified as Richardson, Bailey stated that he saw "all of" the suspect's facial anatomy "at one time or the other," and subsequent events tend to bear him out. When the police arrived at the store, Bailey gave them a description of the man, which he later reiterated at the stationhouse, including approximations of his age, height and weight, and details as to the clothing he was wearing.[29] The description of the clothes matched closely those later found at the apartment building wherein Richardson was apprehended, and in its other aspects was a reasonably accurate portrayal of Richardson.[30]

So also were the descriptive details Bailey supplied at the trial, which included additionally a reference to "some type of scars on his face"[31]—a reference

133 U.S.App.D.C. at 47, 408 F.2d at 1250; Bryson v. United States, 136 U.S.App. D.C. 113, 116, 419 F.2d 695, 698 (1969); Cunningham v. United States, *supra* note 24, 133 U.S.App.D.C. at 134, 409 F.2d at 169; Dade v. United States, 132 U.S. App.D.C. 229, 231 n. 3, 232, 407 F.2d 692, 694 n. 3, 695 (1968).

27. Compare Clemons v. United States, *supra* note 19, 133 U.S.App.D.C. at 43, 408 F.2d at 1246; Long v. United States, 137 U.S.App.D.C. 311, 424 F.2d 799 (1969); Hawkins v. United States, *supra* note 22, 137 U.S.App.D.C. at 105, 420 F.2d at 1308; Frazier v. United States, 136 U.S.App.D.C. 180, 189, 419 F.2d 1161, 1170 (1969); Bryson v. United States, *supra* note 26, 136 U.S.App.D. C. at 118, 419 F.2d at 700; Gregory v. United States, *supra* note 22, 133 U.S. App.D.C. at 324, 410 F.2d at 1023; Macklin v. United States, 133 U.S.App. D.C. 139, 140, 409 F.2d 174, 175 (1969).

28. Compare United States v. Wade, *supra* note 14, 388 U.S. at 241 n. 33, 87 S.Ct. 1926; Hawkins v. United States, *supra* note 22, 137 U.S.App.D.C. at 105, 420 F.2d at 1308 ("some ten minutes"); Frazier v. United States, *supra* note 27, 136 U.S.App.D.C. at 189, 419 F.2d at 1170 ("several minutes"); Bryson v. United States, *supra* note 26, 136 U.S.App.D.C. at 118, 419 F.2d at 700 ("several minutes"); Gregory v. United States, *supra* note 22, 133 U.S.App.D.C. at 324, 410 F.2d at 1023 ("three or four minutes"); Williams v. United States, *supra* note 24, 133 U.S.App.D.C. at 186, 409 F.2d at 472 (six to ten minutes).

In the case at bar, Bailey testified that the man he identified as Richardson "first went around the store," and then came over and asked for cigarettes; that that man was in the store "about three or four minutes, at the most," before he came

over for the cigarettes; that Bailey was at the safe with the two men "approximately three or four minutes"; and that from the time Bailey first observed the two men in the store until "after the safe was empty" and they left the store was "I would say 10 minutes."

29. With respect to Richardson's approximate height and weight the description faltered, but only slightly. This circumstance is possibly explained by the fact that the suspect wore a hat and outer coat at the time of the robbery, and in any event was of too little magnitude to impair the value of the description in its relation to independent source. Compare McRae v. United States, 137 U.S.App. D.C. 80, 88, 420 F.2d 1283, 1291 (1969).

30. Compare United States v. Wade, *supra* note 14, 388 U.S. at 241, 87 S.Ct. 1926; Clemons v. United States, *supra* note 19, 133 U.S.App.D.C. at 38, 408 F.2d at 1241; Hawkins v. United States, *supra* note 22, 137 U.S.App.D.C. at 105, 420 F.2d at 1308; Frazier v. United States, *supra* note 27, 136 U.S.App.D.C. at 189, 419 F.2d at 1170; Bryson v. United States, *supra* note 26, 136 U.S.App.D.C. at 116, 419 F.2d at 698; Gregory v. United States, *supra* note 22, 133 U.S. App.D.C. at 324, 410 F.2d at 1023; Dade v. United States, *supra* note 26, 132 U.S. App.D.C. at 231 n. 3, 232, 407 F.2d at 694 n. 3, 695. See also McRae v. United States, *supra* note 29, 137 U.S.App.D.C. at 88, 420 F.2d at 1291.

31. The police record of the description Bailey furnished them did not mention the scar, or the fact, which Bailey testified to at trial, that the suspect wore tinted glasses during the robbery. These omissions loom a bit larger when it is seen that the record of Bailey's description of the other robber was more complete, and

subsequently validated by exhibition to the jury of a scar Richardson indeed does have on the side of his face.[32] Since the record discloses that Bailey was some ten to fifteen feet from Richardson during the illegal stationhouse confrontation, it seems likely that this testimony had to proceed from his impressions at the time of the holdup.[33]

Quite obviously, the trial judge's ruling on independent source was tantamount to a general affirmation of Bailey's credibility, and again the record lends support. At the hearing on suppression of the identification, Bailey maintained firmly, despite rigorous cross-examination, that Richardson was one of the two robbers in the store.[34] Bailey had already demonstrated an abil-

ity and willingness to distinguish between suspects, having declined to identify the two suspects first brought before him in the store.[35]

These circumstances provided an ample evidentiary showing that Bailey had obtained and retained a mental image of the suspect prior to the suggestive stationhouse confrontation, and that this image paralleled Richardson's appearance quite well.[36] On this basis, the Government met its burden of producing "clear and convincing evidence" of an independent source for Bailey's courtroom identification of Richardson.[37] And extending to the trial judge's ruling on independent source the deference due,[38] particularly with the jury's affirmation after an opportunity to evaluate itself the

---

included note of certain scars on that suspect's face. It would be expected that the police, in eliciting a description, would inquire specifically as to distinctive characteristics, and the importance of recording such details can hardly be discounted. However, all accounts agree that Bailey's in-store description was given a few minutes after the robbery occurred, and the omissions could easily have been occasioned by excitement on the part of the witness or necessary haste on the part of the police. Certainly we cannot attach much significance to omitted matter when we do not know whether it was asked for. Moreover, Richardson did not wear glasses when Bailey observed him at the stationhouse, thus making it somewhat clearer that Bailey's trial testimony was uncontaminated by what he saw there.

32. Compare Clemons v. United States, *supra* note 19, 133 U.S.App.D.C. at 43, 408 F.2d at 1246; Cunningham v. United States, *supra* note 24, 133 U.S.App.D.C. at 134, 409 F.2d at 169; Dade v. United States, *supra* note 26, 132 U.S.App.D.C. at 232 n. 6, 407 F.2d at 695 n. 6.

33. The size of the scar is not shown by the record, but Richardson, while in the witness chair, was requested to "turn your face and demonstrate" the scar to the jury, which he did. This would seem to indicate that the scar was not prominent.

34. Compare Gregory v. United States, *supra* note 22, 133 U.S.App.D.C. at 324, 410 F.2d at 1023; Williams v. United States, *supra* note 24, 133 U.S.App.D.C. at 187, 409 F.2d at 473.

35. Compare Hawkins v. United States, *supra* note 22, 137 U.S.App.D.C. at 106, 420 F.2d at 1309; Cunningham v. United States, *supra* note 24, 133 U.S.App.D.C. at 134, 409 F.2d at 170.

36. We are mindful that only an hour after the holdup Bailey hesitated in making his stationhouse identification of Richardson, and did so positively only after returning to view the suspects a second time, with appellant then wearing the hat and raincoat found at the apartment building. The impact of these circumstances is dissipated, however, by Bailey's explanation that he "wanted to make sure before I identified anybody." Compare Cunningham v. United States, *supra* note 24, 133 U.S.App.D.C. at 134–135, 409 F.2d at 169–170 (failure to identify accused on prior occasion due to fright after receiving threat). See also Long v. United States, *supra* note 27, (failure to tell police of prior confrontation). By the trial judge's assessment, the police officer conducting the stationhouse confrontation "was right" in saying that Bailey "was almost sure of the fellow, but he didn't completely recognize him without the coat" the first time.

37. See text *supra* at note 23.

38. See Clemons v. United States, *supra* note 19, 133 U.S.App.D.C. at 33, 38, 39, 408 F.2d at 1237, 1241, 1242; Frazier v. United States, *supra* note 27, 136 U.S. App.D.C. at 189, 419 F.2d at 1170 n. 42.

reliability of the in-trail identification,[39] we hold that the trial judge properly allowed Bailey to make that identification. By the same token, we dispose of Kemper's contention based on the contrary premise.[40]

The convictions of both appellants are accordingly

Affirmed.

BAZELON, Chief Judge (concurring):

The District Court ruled that witness Bailey's stationhouse confrontation with appellant Richardson was "unnecessarily suggestive," [1] but it permitted Bailey to identify Richardson during the trial because it found an "independent source" for the in-court identification in Bailey's "ample opportunity to recognize Richardson at the scene of the crime." [2] I concur in the affirmance of the convictions in this case because immediately after the crime (and prior to the tainted lineup) Bailey also gave the police a description of the robbers which was recorded on PD Form 251, and which fits Richardson well.[3] In my view, the total evidence supplied "clear and convincing evidence that the in-court identifications were based upon observations of the suspect" [4] other than the constitutionally defective ones. Accordingly, I need not reach the difficult question whether an "opportunity to observe the alleged criminal act" [5] could, standing alone, provide

39. Compare Gregory v. United States, *supra* note 22, 133 U.S.App.D.C. at 325, 410 F.2d at 1024. See also Simmons v. United States, *supra* note 20, 390 U.S. at 384, 88 S.Ct. 967, 19 L.Ed.2d 1247.

40. As we have pointed out, Kemper's contentions were based in the first instance upon the same allegation of error that as to Richardson we find wanting. We need not, of course, consider whether Kemper could prevail on his claim had we found that allegation of error acceptable.

1. Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

2. *See* Williams v. United States, 133 U.S.App.D.C. 185, 409 F.2d 471 (1969); Cunningham v. United States, 133 U.S.App.D.C. 133, 409 F.2d 168 (1969); Bryson v. United States, 136 U.S.App.D.C. 113, 120, 419 F.2d 695, 702 (1969) (Burger, J. concurring and dissenting): "Since the witnesses had a prior opportunity to observe, there was plainly an independent source for the in-court identifications." *Cf.* majority opinion at 1157–1158 *supra*.

3. Among the pre-lineup tests of a witness' recollection which comport with *Wade* are (1) an accurate description given by the witness shortly after the incident, *see, e. g.*, Bryson v. United States, *supra* note 2, at 116, 419 F.2d at 698; Gregory v. United States, 133 U.S.App.D.C. 317, 324, 410 F.2d 1016, 1023 (1969); Clemons v. United States, 133 U.S.App.D.C. 27, 40, 408 F.2d 1230, 1243 (1969); and (2) the selection of the suspect's picture in a properly conducted photo-identification, *see, e. g.*, Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247

(1968); Bryson v. United States, *supra*, at 118, 419 F.2d at 700; Clemons v. United States, *supra*, at 43, 408 F.2d at 1246; and (3) recognizing the suspect in a chance meeting, *see, e. g.*, Long v. United States, 137 U.S.App.D.C. 137, 311, 424 F.2d 799, 803 (No. 22,218; Dec. 18, 1969); Clemons v. United States, *supra*, at 41, 408 F.2d at 1244. *But see* Mason v. United States, 134 U.S.App.D.C. 280, 414 F.2d 1176 (1969).

4. United States v. Wade, 388 U.S. 218, 240, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

5. *Id.* at 241, 87 S.Ct. at 1940. The *Wade* Court suggested "opportunity to observe" as one example of a "factor" in determining whether an "independent source" exists. *Compare* 388 U.S. at 241, 87 S.Ct. 1926, *with* the topic headings in Chapter IV ("Danger Signals" of erroneous identifications), P. Wall, Eye-Witness Identification in Criminal Cases (1965). An "opportunity to observe" supplies the "source" for an identification, but under *Wade* a court must still determine whether there are reliable indications that the source is "independent" and untainted. Wall does not suggest that an "opportunity to observe" shows that an identification has not been contaminated by a suggestive procedure; his work is peppered with references to unreliable identifications springing from inadequate opportunities to observe the suspect, *see, e. g.*, *id.* at 16, 20–22, 68, 85, 92–95, 112, 114–115, 125–128, 189–190, 194–197, 209–210, and he also reports "frequent" cases of misidentification based on "observations [made] under favorable conditions." *Id.* at 7.

"clear and convincing" confirmation that a witness' courtroom identification of the defendant is "independent" of the intervening taint.