Louis Edward **TOWLER**, Appellant,

v.

**UNITED STATES,** Appellee.

No. 5255.

District of Columbia Court of Appeals.

Argued Oct. 13, 1970.

Decided Dec. 7, 1970.

John A. Keats, appointed by this court, for appellant.

Jerome Wiener, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., John A. Terry and Stephen W. Grafman, Asst. U. S. Attys., were on the brief, for appellee.

Before HOOD, Chief Judge, KELLY, Associate Judge, and MEYERS (Associate Judge, Retired).

HOOD, Chief Judge:

After trial by the court, appellant was convicted of two charges of petit larceny and one of assault. On this appeal, three contentions are made.

First, it is urged that the trial court erred in permitting the complaining witness to make an in-court identification of appellant based on a photographic, pretrial identification allegedly lacking in due process. The events leading up to the extrajudicial identification are summarized below.

The Government presented evidence that on August 10, 1969, at approximately 6

a. m., appellant and several other persons forcefully entered the room on the first floor of a three-story house where Jamie Nacvaez was asleep. Appellant took Mr. Nacvaez' watch and struck him. The intruders then went upstair while Mr. Nacvaez remained on the first floor. On the second floor, appellant and the others entered the room of Mr. Christopher Joyce who, at the time, was talking to a friend. Appellant picked up Mr. Joyce's television set, took it downstairs without his permission and carried it to a vehicle parked outside. After descending the stairs, Mr. Joyce looked out the window and saw appellant again strike Mr. Nacvaez who had followed appellant outside to inquire about his watch. The next day appellant was apprehended in the area and placed in custody. Several days later a police officer showed Mr. Nacvaez a single photograph of appellant and asked him whether the man in the photograph was the same man that took his watch. In response, Mr. Nacvaez identified appellant as the man who took his watch and assaulted him.

At the trial, Mr. Nacvaez, through his interpreter, testified that appellant was wearing "black" pants and a "sort of a pinkish color" nylon synthetic shirt. He also testified that he saw appellant outside where it was light and recognized appellant by his features and particularly a reddish streak in his hair similar to that which appellant wore at the trial. In response to questioning by the court, Mr.Nacvaez stated that he would have been capable of identifying appellant even if he had not seen the photograph.

In Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968), it was recognized that a pretrial identification by photograph may be "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." If so, the conviction will be set aside as failing to meet the demands of due process.[1] In further enunciating the principle laid down in *Simmons*, the United States Court of Appeals in *Clemons*[2] held that in-court identifications based on sources independent of the improper pretrial identification do not create a "very substantial likelihood of irreparable misidentification." While the showing of a single photograph to a witness several days after the arrest of the accused may have been an improper police procedure,[3] we hold that the conviction must stand because the in-court identification was based upon observations of appellant other than the photographic identification.

■ It is evident from the transcript that the trial judge was not of the opinion that the pretrial identification tainted the subsequent in-court testimony, and the record, examined for factors which satisfy the requirement of independent source, fairly supports that determination.[4] In the course of the intrusion, both Mr. Nacvaez and Mr. Joyce[5] had occasion to observe appellant in close quarters in their respective rooms as well as in clear condi-

1. Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) ; Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

2. Clemons v. United States, 133 U.S.App. D.C. 27, 408 F.2d 1230 (en banc 1968), cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969).

3. *See* Simmons v. United States, *supra* n. 1, at 383, 88 S.Ct. 967; Mason v. United States, 134 U.S.App.D.C. 280, 286, 414 F.2d 1176, 1182 (1969).

4. For a comprehensive listing of decisions which discuss such factors, see cases cited in United States v. Kemper, D.C.Cir., 433 F.2d 1153 nn. 26–35 (decided July 10, 1970).

5. Although the in-court identification made by Mr. Joyce is not challenged because he was not shown photographs of appellant nor did he view appellant in a lineup, his description of appellant at trial generally coincided with that of Mr. Nacvaez. This lends further support to the reliability of Mr. Nacvaez' observations at the time of the offense.

tions outside the house. Both witnesses recalled the distinctive feature of appellant's hair and were quite positive about their recollection of appellant during the unfortunate incident.[6] Under these circumstances, the trial court could reasonably find that Mr. Nacvaez formulated a reliable image of appellant prior to the suggestive, photographic showing and, according due deference to the trial judge's determination,[7] we hold that the in-court identification was not such as to deny appellant due process of law.

■ Second, appellant claims that he was denied effective assistance of counsel on the grounds that counsel failed to move for suppression of identification evidence and failed to call witnesses who would allegedly support appellant's alibi.[8] In attempting to establish incompetence of counsel, appellant shoulders a heavy burden[9] and must demonstrate that gross incompetence has blotted out the essence of a substantial defense.[10] It is well established in this jurisdiction that tactical decisions made by counsel, as a matter of strategy, during the course of a trial are not proper subjects of review.[11] The failures of which appellant complains fall clearly within the scope of trial counsel's judgment[12] and, as such, do not satisfy his burden of showing ineffective assistance.

Looking to the record, we find that although counsel did not move for suppression, he directed the court's attention to the photographic identification upon his cross-examination of Mr. Nacvaez. The trial judge at this point had the circumstances of the photographic identification before him and, exercising his dual function as factfinder and judge, found that the in-court identification could be otherwise justified. Bearing in mind that this case was tried before the court sitting without a jury, there was certainly no compelling reason to move for suppression nor did any prejudice result to appellant for failure to do so. As to counsel's failure to subpoena alibi witnesses, we do not know what the substance of their testimony would have been, and, therefore, on this record, appellant falls far short of his burden.[13]

Appellant's last contention is that the conviction should be reversed because there was no valid waiver of a jury trial. The Government concedes that appellant demanded a trial by jury but contends that since the case "came before the court for trial by the court", we must assume that appellant effectively relinquished his right to a jury trial. We cannot accept the Government's assumption and point out that its reliance on the cases of Hensley v. United States, D.C.Mun.App., 155 A.2d

---

6. For example, Nacvaez, pointing at appellant, testified: "That man I remember, because he take my watch and pushed me and broke my teeth."

7. *See* Clemons v. United States, *supra*, 408 F.2d, n.2, at 1237, 1241; United States v. Kemper, *supra* n.4 (slip op. at 13).

8. Counsel on appeal is different from counsel below.

9. Harried v. United States, 128 U.S.App. D.C. 330, 333, 389 F.2d 281, 284 (1967); Mitchell v. United States, 104 U.S.App. D.C. 57, 259 F.2d 787, cert. denied, 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86 (1958).

10. Scott v. United States, 427 F.2d 609, 610 (D.C.Cir. 1970), citing Bruce v. United States, 126 U.S.App.D.C. 336, 339, 379 F.2d 113, 116 (1967).

11. Mitchell v. United States, *supra* n.9. *See, e. g.,* Bruce v. United States, *supra* n.10; Scott v. United States, D.C.App., 259 A.2d 353 (1969), aff'd, 427 F.2d 609 (D.C.Cir. 1970); Hensley v. United States, D.C.Mun.App., 155 A.2d 77 (1959), aff'd, 108 U.S.App.D.C. 242, 281 F.2d 605 (1960).

12. *See* Washington v. United States, 134 U.S.App.D.C. 223, 225 n.6, 414 F.2d 1119, 1121 n.6 (1969); Scott v. United States, D.C.App., *supra* n.11.

13. This question could have been more properly and intelligently raised in the trial court by a postconviction motion supported by affidavits of the alleged alibi witnesses, one of whom was appellant's mother, stating the substance of what their testimony would have been and the reasons for their nonappearance.

77 (1959), aff'd, 108 U.S.App.D.C. 242, 281 F.2d 605 (1960) and Eliachar v. United States, D.C.App., 229 A.2d 451 (1967) is ill-founded. In those cases the sole question was whether it was required that an accused personally indicate or express his acquiescence in the waiver. The court held, in both cases, that no such requirement was necessary to constitute a valid waiver.[14] As pointed out by this court in Jackson v. United States, 262 A.2d 106 (1970), *the record* in both cases revealed that defense counsel, with the acquiescence of his client, waived trial by jury in open court.[15]

■ In the present case, however, the record of what occurred in open court is silent as to any waiver.[16] We recognize that a waiver made in open court may have escaped the record if it was made in assignment court or prior to the actual reporting of the trial.[17] Accordingly, we remand this case for a hearing to determine whether appellant knowingly and voluntarily waived his right to a jury trial and requested a trial by the court. In the absence of a finding that there was such a waiver, the conviction will be reversed and a new trial awarded. Otherwise, the conviction will stand.

Remanded with instructions.

14. For trials commenced after February 17, 1970, there should be in the record a statement by the defendant himself in order to determine whether he knowingly and voluntarily waived his constitutional right to a jury trial. Jackson v. United States, D.C.App., 262 A.2d 106, 109 (1970).

15. D.C.Code 1967, § 16–705(a) reads in pertinent part:
   In a criminal prosecution within the jurisdiction of the Court of General Sessions in which, according to the Constitution of the United States, the accused would be entitled to a jury trial, the trial shall be by jury, *unless the accused in open court expressly waives trial by jury and requests to be tried by the judge,* * * * (Emphasis added.)

16. The scribbled markings on one of the informations (29382–69CD) are such that it is impossible to determine whether the notation indicates that defendant demanded or waived a jury trial. Even if the notation clearly indicated that a jury trial was waived, we are in wholehearted agreement with the principle laid down in *Jackson* that such a notation, unaccompanied by a record of the proceedings which it is supposed to reflect, does not constitute a valid waiver.

17. Again we think the question of waiver of jury trial could have been properly raised in the trial court by a postconviction motion with a view to obtaining a prompt answer to the question or, at least, a record which would enable this court to intelligently review the question.