**Joann PENDER, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 7048.**

District of Columbia Court of Appeals.

Submitted Aug. 29, 1973.

Decided Oct. 19, 1973.

Dumond Peck Hill, Washington, D.C., appointed by this court, for appellant.

Harold H. Titus, Jr., U. S. Atty., John A. Terry, James A. Fitzgerald and Michael G. Scheininger, Asst. U. S. Attys., for appellee.

Before FICKLING, GALLAGHER and HARRIS, Associate Judges.

FICKLING, Associate Judge:

Appellant Joann Pender was convicted after a jury trial for violation of D.C.Code 1967, § 22–1506 (three-card monte statute) and § 22–2201 (grand larceny). On appeal she asserts: (1) that the post-lineup identi-

fication was impermissible in the absence of counsel,[1] and that the lineup itself was unnecessarily suggestive in violation of her right to due process of law;[2] thus, the testimony concerning the lineup was inadmissible; (2) that the complainant's in-court identification lacked a source independent of the pre-trial lineup. After scrutinizing the record, we find the admission of the identification testimony does not warrant reversal. We do find it necessary, however, to reverse the conviction for violation of the three-card monte statute.

On March 28, 1972, Mrs. Annie M. Sherrill, an elderly local resident, was the victim of a classic "short con" game known as "pigeon drop." At approximately 1 p. m. that day, Mrs. Sherrill was leaving a Safeway supermarket at Georgia Avenue and Ingraham Street, N.W., when she was stopped by a male stranger, later identified as Johnny Mason. Mr. Mason told her he had just found a large sealed envelope that probably contained money. While Mr. Mason and Mrs. Sherrill were discussing the envelope, a woman, later identified by Mrs. Sherrill as the appellant, approached and urged Mr. Mason to open the envelope. Mr. Mason responded by handing the envelope to the appellant; she opened it and exclaimed that it contained thousands of dollars. Mr. Mason immediately took back the envelope and offered to pay appellant and Mrs. Sherrill $50 each if they would keep quiet regarding the envelope. He quickly, however, withdrew the offer and requested that both women remain on the corner while he went up the block to consult with his "boss" about the matter.

During the time Mr. Mason was gone, appellant told Mrs. Sherrill that she had just collected $18,000 as a settlement from an automobile accident and had the money in her bosom. After a few minutes, Mr. Mason returned; he explained that at the direction of his "boss" he would pay each of the ladies $1,000 in cash if each would give him $1,000 of their own money to hold. Appellant quickly agreed to the plan and gave Mr. Mason the $1,000. When Mrs. Sherrill said that she had only $300, Mr. Mason promised to lend her the $700 balance and sent her to her downtown bank to withdraw the $300. Accompanied by appellant Mrs. Sherrill went home to get her passbook and then to her bank, where she made a withdrawal of $300.

From the bank Mrs. Sherrill and appellant took a taxicab back to the corner of Georgia Avenue and Ingraham Street. Mr. Mason was waiting for the two women and escorted them into the Safeway to divide the money. Inside the Safeway he asked for Mrs. Sherrill's $300, explaining that he would first take appellant to the "boss" to get her $1,000 and then come back for Mrs. Sherrill. Mrs. Sherrill hesitantly surrendered the money to Mr. Mason. Appellant and Mr. Mason left the store and never returned. The crime took between two and three hours to accomplish.

The next day, on March 29, Mrs. Sherrill met with Detective Harrison in the Check Section office at police headquarters; the detective provided her with four or five volumes of photographs to examine.[3] After going through the volumes, Mrs. Sherrill identified two pictures of appellant, exclaiming she was "certain this is the individual."

On May 11, 1972, Mrs. Sherrill attended a lineup conducted in the presence of appellant's court-appointed counsel. Before the start of the lineup, Mrs. Sherrill was told that appellant would be present. While viewing the lineup Mrs. Sherrill was unable to identify appellant. On the way out of the station house, however, in the

1. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

2. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

3. Appellant does not contest the photograph identification.

sole company of a police officer, she said she thought Number 4 (appellant) looked like her.

A pretrial hearing was held on appellant's motion to suppress the identification testimony. After listening to Mrs. Sherrill's testimony, the substance of which is set forth above, the trial court found there was an independent source for her in-court identification and that, additionally, her post-lineup identification was admissible.

At trial the prosecution offered into direct evidence both the in-court and post-lineup identifications. In defense appellant presented an alibi stating she had spent the entire day of March 28 at her regular place of employment. She further argued that she was wrongly identified, and that she could easily be distinguished because she had three teeth missing and two scars on her neck, neither of which was noted by Mrs. Sherrill.

■ We do not decide whether the lineup and post-lineup identification were conducted in an impermissible manner for if there was any error, it was harmless beyond a reasonable doubt. Mrs. Sherrill made unequivocal photograph and in-court identifications of appellant. Nevertheless, her identification of appellant during and immediately after the lineup was uncertain. This uncertainty does not bolster the case against appellant, but actually diminishes the overall strength of Mrs. Sherrill's identification testimony. Thus, it is clear beyond a reasonable doubt that a guilty verdict would have resulted even if the jury had never heard the challenged testimony. *See* Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967).

■ Appellant's claim that Mrs. Sherrill's in-court identification lacked an inde-

pendent source because she did not notice that appellant had any teeth missing or any scars on her neck can similarly be rejected. Detective Harrison testified that he spent 10 to 15 minutes speaking with appellant on the day of her status hearing and was never aware of her dental deficiency. After Mrs. Sherrill stated at trial that the woman who participated in the crime was wearing a brown fur coat, appellant said, during cross-examination, that a fur coat could conceal her neck scars. In addition, Mrs. Sherrill was in the company of appellant for the duration of the crime which took from two to three hours to accomplish. As a result, she had more than an ample opportunity to observe and retain an image of appellant. Mrs. Sherrill also identified appellant's photograph the day after the crime from volumes given her by the police; at trial she testified firmly and positively that her in-court identification was based on her observations of appellant during the commission of the crime. We therefore hold the trial court was correct in finding the in-court identification was based on a source independent of the lineup. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230 (1968), cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969); United States v. Kemper, 140 U. S.App.D.C. 47, 433 F.2d 1153 (1970).

■ Lastly, we direct our attention to the three-card monte statute, D.C.Code 1967, § 22–1506. We have recently construed that statute as not applying to the type of conduct proved here. *See* United States v. Brown, D.C.App., 309 A.2d 256 (1973). It follows that the conviction on this count must be reversed. In all other respects, the judgment of the trial court is affirmed.

Affirmed in part; reversed in part.