UNITED STATES of America

v.

Henry B. JOHNSON, Appellant.

UNITED STATES of America

v.

Clifford L. ESTES, a/k/a Clifford Allen, Appellant.

Nos. 23375, 23376.

United States Court of Appeals, District of Columbia Circuit.

Argued March 12, 1971.

Decided Oct. 20, 1971.

Mr. Alan Y. Naftalin, Washington, D. C. (appointed by this court), with whom Mrs. Margot S. Humphrey was on the brief, for appellant in No. 23,375.

Mr. Robert J. Corber, Washington, D. C. (appointed by this court) for appellant in No. 23,376.

Mr. Michael J. Madigan, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee. Mr. John R. Dugan, Asst. U. S. Atty., and Mr. James R. Phelps, Asst. U. S. Atty., at the time the record was filed, also entered appearances for appellee.

Before BAZELON, Chief Judge, and WRIGHT and TAMM, Circuit Judges.

BAZELON, Chief Judge:

These appeals from convictions on several counts for armed robbery and assault with a dangerous weapon raise questions concerning the validity of the procedures employed by the Government to obtain photographic, line-up and in-court identifications of both appellants. As the record shows, the Government's case against the appellants rested substantially on identification testimony of several eye-witnesses. Six witnesses testified for the Government at trial. Five were victims of the robbery [1] and four of these identified one or both of the defendants as participants. Only appellant Johnson took the stand and denied participating in the hold-up.

In cases such as these, the error is not likely to be harmless if constitutional rules are violated in obtaining identification testimony.[2]

Elimination of any of the identification evidence against both Johnson and Estes might require reversal of their convictions and an order for a new trial. However, the record does not furnish an adequate basis for review of the trial court's decision to admit certain testimony and we therefore remand these cases to the District Court for further findings of fact and conclusions of law in regard to three specific issues.

I.

On July 1, 1968 at approximately 11:15 a. m. a Safeway store located at 218 K Street N.W. was robbed by two armed Negro males. A third lingered at the door. One of them held a gun on the store manager Mr. Gilbert Musselman, took cash from a tray in his office and then struck Mr. Musselman several times with his gun. Mr. John Gaines, the produce department manager, was told by one robber to open the store safe and ordered by the second robber to lie down on the floor. Mr. Kenneth Faunteroy, a cashier at the store, was ordered by one of the robbers to empty his cash drawer. Mr. James Richardson, Jr., another cashier, was also robbed at gunpoint. Finally Mr. Allan Lane, a customer in the store, was ordered by one robber to lie on the floor. The second later approached him and took his watch from his wrist.

Following the robbery, the police obtained photographic identifications of both Johnson and Estes from several of the eyewitnesses and arrested both sus-

---

1. The sixth witness, a police officer, testified to the circumstances surrounding the seizure of a pistol from appellant Estes' apartment. This pistol was introduced into evidence against Estes who was also charged and convicted of carrying a pistol without a license.

2. *Compare* Marshall v. United States, 141 U.S.App.D.C. 1, 436 F.2d 155 (1970) with United States v. Gambrill, 146 U.S. App.D.C. ——, 449 F.2d 1148, (decided July, 29, 1971). In *Marshall*, the court concluded that any error committed in admitting identification testimony against the defendant was harmless in view of the overwhelming tangible evidence of his guilt, citing the rule outlined in Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969) and Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

pects. In August, Musselman, Gaines and Faunteroy attended a police lineup and made further identifications of the defendants. In March of 1969 the trial court conducted a pretrial hearing to determine the admissibility of the photographic, lineup and in-court identification evidence. The trial judge excluded Mr. Gaines' photographic identification of the defendant Estes and ruled all other evidence admissible.

All five above-mentioned victims of the robbery subsequently testified at trial and the following identifications were made: Mr. Musselman testified that he recognized the defendant Estes in court as the robber who had beaten him; and that he had previously identified a photograph of Mr. Estes and picked him out of a police lineup. Mr. Gaines testified that he recognized both defendants in court and had picked them both out of the police lineup. Mr. Faunteroy made an in-court identification of Johnson and testified that he had also recognized Johnson in the lineup. Mr. Lane identified both defendants as the robbers in court, and testified that he had identified them both from photographs prior to trial.

Each appellant challenges the admission of much of this testimony for a variety of reasons. Those issues requiring further consideration by the District Court will be considered in detail.

## II.

### Substitute Counsel at the Lineup

Appellant Estes contends on appeal that the substitute counsel representing him at the police lineup never provided any information about the lineup to his trial counsel, and did not participate in the trial preparations. On this point, the record is incomplete. Both Johnson and Estes, therefore, filed a motion in this court to supplement the record to include affidavits never presented to the District Court from the substitute coun-

sel and from the appellants' trial counsel. We agreed to postpone decision on appellants' motions until the argument on the merits. We have decided that the proper course is for appellants to present their motion to supplement the record to the District Court.

The facts presented in the affidavits, if admitted into the record, raise a serious question about the adequacy of appellants' representation by counsel at the lineup under United States v. Wade [3] and Gilbert v. California.[4] The affidavits purport to prove that according to the practice established in 1968, attorneys from the Legal Aid Agency assisted on an ad hoc basis at lineups when defense counsel had not yet been appointed. A Legal Aid attorney attended the lineup as counsel for both Johnson and Estes. In the affidavits, both substitute and trial counsel state that to the best of their recollection, they never communicated about the lineup.

While we express no opinion on the merits of appellants' claims in this case, the controlling principles of law were outlined by the Supreme Court in *Wade* and *Gilbert*. In *Wade,* the Court left open the possibility that substitute counsel might suffice if "substitute counsel's presence * * * eliminate(s) the hazards which render the lineup a critical stage for the presence of the suspect's *own* counsel." [5]

■ The hazards which the Court had in mind were not limited to those possibilities for prejudice which the very presence of an attorney at the lineup might discourage or even eliminate. The Court was also concerned to assure a "meaningful confrontation" in the courtroom with full cross-examination into the details of the witness' lineup identification of the defendant. While the presence of substitute counsel rather than the defendant's own trial counsel does not in itself violate the defendant's Sixth Amendment rights, see United States v.

3.  388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

4.  388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

5.  388 U.S. at 237, n. 27, 87 S.Ct. at 1938.

Kirby, 138 U.S.App.D.C. 340, 427 F.2d 610 (1970), the *Wade* and *Gilbert* decisions may be read to presume that the substitute counsel would assist trial counsel in preparations to challenge the fairness of the lineup and to cross-examine witnesses who had been present.[6]

This court went further than *assuming* that substitute counsel would communicate with trial counsel and suggested in Marshall v. United States, *supra*, note 2, 141 U.S.App.D.C. at 6, 436 F.2d at 160 n. 18 that the Government may have to assume the burden of ensuring that the substitute counsel's observations are transmitted to trial counsel.

■ We note only the gravity of the issue presented.[7] In view of the seemingly honest mistake of trial counsel in failing to raise the question at trial and the subsequent appointment of new counsel for this appeal, we think the appellants' attempt to supplement the record should not be foreclosed in this court. Since these cases will be remanded for reasons outlined in Parts III and IV of this opinion, on remand the defendants shall have the opportunity to seek leave to supplement the record in the District Court. In the interests of judicial economy, appellants' claims are better disposed of directly rather than by subsequent collateral review.

### III.

### Testimony of Mr. Gaines

■ Both Johnson and Estes challenge the admission of Mr. Gaines' iden-

tification testimony on the ground that his recognition of them in the lineup and in court was tainted by the overly suggestive photographic identifications the police had earlier obtained from him. In Simmons v. United States the Supreme Court held that "convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside * * * if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." [8] Rather than banning the use of pretrial photographic identifications in all cases, the Court suggested that each case must be considered on a careful analysis of its own facts. Accordingly, this court has established a two-pronged inquiry whenever questions of suggestive photographic identifications are raised:

"(1) whether the photographic display itself was impermissibly suggestive and (2) if so, whether there is nevertheless an independent source for the in-court identification." [9]

Applying these tests to the facts of the instant appeals, we find no ground to overturn the trial court's ruling that Gaines' photographic identification of Johnson was not impermissibly suggestive but we remand Estes' claim to the District Court for a further hearing.

The circumstances surrounding the photographic identifications of both appellants are as follows: On July 2, 1968, the day after the robbery, Mr. Gaines was taken to a police station where he

---

6. In *Kirby*, the court explored to some length the advantages which might be derived from the presence of a substitute counsel and from one's own trial counsel. None of these supposed advantages accrue to the defendant unless some communication is established between the two representatives of the defendant's interests.

7. The court in *Marshall* was inclined to raise this issue *sua sponte* had it not found the use of the identification testimony to be harmless error. *See* note 2, *supra*.

8. 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). The Court relied

on Stovall v. Denno which held that an identification confrontation which is "unnecessarily suggestive and conducive to irreparable misidentification" deprives the defendant of due process of law. 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967).

9. United States v. Gambrill, *supra* note 2, 146 U.S.App.D.C. at ——, 449 F.2d at 1153. *See also* Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230 (1968), cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969), for a discussion of the standard of review established by *Wade, Stovall* and *Simmons*.

viewed several books of black and white police photographs. He failed to make any identification at that time. The police then informed him that several photographs were missing from the files, in fact that they had been taken to the Safeway store. Gaines admitted at the pretrial hearing that he assumed these pictures were of particular interest. At the store he examined about 30 loose photographs and made a tentative [10] identification of Johnson. A few days later the police brought a group of 15 or 20 colored photographs to the store and told Gaines that it included photographs of the man he had picked out before. Gaines again positively identified the photograph of Johnson.[11] The police then selected a photograph of the defendant Estes and told Gaines that this man was a friend of Johnson's, the man Gaines had just identified. At this point Gaines identified Estes as the second robber. At the lineup held two months later, Gaines identified both Johnson and Estes and was able to identify them at the hearing prior to trial.

The trial judge ruled that Gaines' photographic identification of Estes was the product of suggestive procedures and excluded it from trial. However, on the basis of Gaines' testimony [12] he ruled that Gaines' identifications of Estes both at the lineup and in court were based on independent observations at the time of the robbery and were not tainted by the impermissible display of Estes' photograph. All of Gaines' testimony concerning his identifications of Johnson was ruled admissible.

■ As stated previously, we take no exception to the trial court's decision to admit all of Gaines' testimony against Johnson. The gratuitous comment of the police indicating that the group of colored photographs included a picture of the man Gaines had identified previously [13] was perhaps unfortunate but was not of sufficient impact to qualify as impermissible suggestiveness,[14] particularly since Gaines had made his prior spontaneous identification of Johnson.

■ The impact of the police comment that a particular photograph por-

10. At the pretrial hearing, Gaines admitted that there was at least some doubt in his mind about this identification.

11. Gaines stated at the pretrial hearing that he was 100% sure when he made this second identification.

12. At the pretrial hearing Gaines testified as follows:
    Q: Are you able to say the identification of the defendant Estes at the time of the lineup was solely upon your observation of him at the time of the robbery?
    A: Yes.
    Q: Would you explain that a little more please? Yes, what?
    A: Well, when I saw him in the lineup, I was sure he was the person.
    Q: Were you sure because you had seen him in the photographs or were you sure that it was because you had seen him in the flesh during the robbery?
    A: Because I had seen him in the flesh during the robbery.
    On cross-examination he stated as follows:
    Q: Did you identify Mr. Estes from your recollection of what took place

at the robbery, or what; was your identification colored by the fact that you had information from the police that Mr. Estes was a friend of Mr. Johnson?
    A: No, I picked them out from the basis of actually seeing him at the robbery.
    Q: In other words, if you hadn't seen the photographs at any time, you feel that you still could have picked out Mr. Estes in the lineup?
    A: Yes.
    Q: In other words, if you hadn't seen any photos of Mr. Estes at any time, you feel you still could have picked out Mr. Estes in the lineup?
    A: Yes, I would.

13. Gaines admitted that the police had not appeared to take this identification too seriously and thus indicated that it was not irrevocably fixed in his mind.

14. *Cf.* United States v. Gambrill, *supra* note 2, 146 U.S.App.D.C. at ——, 449 F.2d at 1151 (note 3) in which the court regretted but did not consider unduly suggestive a police comment that two arrested suspects would appear in the lineup.

trayed a friend of Johnson's was of course far greater. It caused Gaines to make an identification of a man he had previously failed to identify [15] or describe to the police.[16] The police comment served to single out Estes' photograph for display [17] and indicated police suspicion of Estes by linking him irrevocably to Johnson, the man Gaines felt certain had been one of the robbers.[18] We thus agree with the trial court that the display of Estes' photograph to Gaines was impermissibly suggestive and raised a substantial likelihood of misidentification. However, we must disagree with the trial court's decision to admit Gaines' lineup and in-court identifications of Estes.

■ It appears from the record that the trial court relied heavily on Gaines'

own opinion that these later identifications were based on a source independent of the photographic display.[19] The inquiry at the pretrial hearing went no further.[20] While Gaines may have been a credible and convincing witness, his statements alone cannot provide the "clear and convincing" [21] evidence with which the Government must prove the existence of an independent source. This court has warned against heavy reliance on the reliability of a witness who protests too positively about the source of his identifications,[22] and has held that this testimony must be evaluated in the light of all the circumstances.[23]

Among the relevant factors to be considered in this evaluation are:

the prior opportunity to observe the alleged criminal act, the existence of

---

15. Estes' photograph had been passed over in Gaines' perusal of the color photographs. It is also logical to assume that a black and white photograph of Estes was included in the group out of which Gaines first identified Johnson, since this group of photographs had been brought to the Safeway and Mr. Musselman made a positive identification of a photograph of Estes. In *Wade*, the Supreme Court listed "failure to identify the defendant on a prior occasion" as one factor to consider in determining whether an in-court identification is free from the taint of an impermissibly conducted confrontation. Gaines' failure to identify Estes' photographs highlights the impact which the suggestive display and comment must have had.

16. Other than that he wore sunglasses, was clean shaven and had on a dark jacket.

17. In *Simmons*, the Supreme Court noted that the danger of misidentification is increased "if the police display to the witness only the picture of a single individual * * * or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized." 390 U.S. at 383, 88 S.Ct. at 971.

18. "The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime." *Id.* at 383, 88 S.Ct. at 971. Compare Gregory v. United States,

133 U.S.App.D.C. 317, 324, 410 F.2d 1016, 1023 (1969) in which the court noted that the witness had no knowledge that a case was built up against the man he identified.

19. The only statement of the trial judge which may be considered to be a ruling on the question of an independent source is the following:
"I think it is important that the witnesses all state that their ability to make an in-court identification [was] from what they saw at the scene of the robbery rather than the photographs or lineup." Transcript, p. 71.

20. *See* footnote 14, *supra*. In fact, Gaines was questioned only as to the source of his lineup identification of Estes.

21. *See* United States v. Wade, *supra* note 3, 388 U.S. at 240, 87 S.Ct. 1926 and United States v. York, 138 U.S.App.D.C. 197, 199, 426 F.2d 1191, 1193 (1969).

22. *See* Clemons v. United States, *supra* note 9, 133 U.S.App.D.C. at 39, 408 F.2d at 1242.

23. In United States v. Gambrill, *supra* note 2, 146 U.S.App.D.C. ——, 449 F.2d 1148, this court overturned the convictions of two defendants on the ground that the record as a whole showed no independent source for an eyewitness identification of the suspects despite the witness' assertions, which the trial court apparently believed, that she recognized them on the basis of what she had observed during the crime.

any discrepancy between any prelineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion and the lapse of time between the alleged act and the lineup identification.[24]

■ We have ourselves examined the record[25] and find sorely lacking any detailed inquiry into these factors or any other facts which might buttress Gaines' own opinion. What we do derive from the record is that there is enough of a question as to whether Gaines had an independent source for his lineup and in-

court identifications of Estes to require further clarification. His opportunity to observe the criminal act appears to have been brief;[26] his description of Estes was vague and contradicted;[27] he completely failed to identify Estes from photographs prior to the suggestive display;[28] and a considerable period of time elapsed between the robbery and the lineup in which Gaines did identify Estes.[29] If these factors stood alone there would be a substantial question as to the finding of an independent source for Gaines' identification of Estes. However, we note that such findings are overturned on appeal only with great infrequency,[30] and then only on the basis of a complete and detailed record.[31] We do not have

24. United States v. Wade, *supra* note 3, 388 U.S. at 241, 87 S.Ct. at 1940. These factors were also evaluated in United States v. Gambrill, *supra* note 2, 146 U.S.App.D.C. at ——, 449 F.2d at 1154, and Hawkins v. United States, 137 U.S.App.D.C. 103, 420 F.2d 1306 (1969).

25. This court may review the facts on the record to determine what support they offer for the finding of an independent source. *See* United States v. Kemper, 140 U.S.App.D.C. 47, 433 F.2d 1153, 1156 n. 24 (1970); Hawkins v. United States, *supra* note 24, 137 U.S.App.D.C. at 104, 420 F.2d at 1307; Cunningham v. United States, 133 U.S.App.D.C. 133, 134, 409 F.2d 168, 169 (1960); Williams v. United States, 133 U.S.App.D.C. 185, 187, 409 F.2d 471, 473 (1969).

26. Gaines identified Estes as the second of the two robbers, the one who ran up and told him to lie on the floor. He testified that he only observed the first robber for ten or twelve seconds, and admitted that once he was on the floor he saw nothing. *Compare* the lengthier opportunities to observe the criminal act noted in United States v. Hinkle, 145 U.S.App.D.C. ——, 448 F.2d 1157, (No. 24,273 decided July 19, 1971) (three to four minutes); Hawkins v. United States, *supra* note 24, 137 U.S.App.D.C. at 105, 420 F.2d at 1308 (ten minutes); Frazier v. United States, 136 U.S.App. D.C. 180, 189, 419 F.2d 1161, 1170 (1969) (several minutes); Williams v. United States, *supra* note 25, 133 U.S. App.D.C. at 187, 409 F.2d at 473 ("unique . . . opportunities for sustained observation").

27. Mr. Musselman and Mr. Faunteroy both identified Estes as wearing a loud green shirt and hat (Transcript, pp. 14, 60 and 61) whereas Gaines described him as wearing a dark jacket. *See* footnote 18, *supra*. *Compare* the descriptions relied on in United States v. Hinkle, *supra* note 26, 145 U.S.App.D.C. at ——, 448 F.2d at 1159; Hawkins v. United States, *supra* note 24, 137 U.S.App.D.C. at 105, 420 F.2d at 1308; and Frazier v. United States, *supra* note 26, 136 U.S. App.D.C. at 189, 419 F.2d at 1170.

28. *See* note 15, *supra*.

29. The fact that Gaines' lineup identification of Estes occurred almost two months after the robbery weakens the reliability of this identification as a measure of Gaines' ability to recognize Estes from the robbery rather than from a study of Estes' photograph. See Gregory v. United States, *supra* note 18, 133 U.S. App.D.C. at 324, 410 F.2d at 1023.

30. United States v. Gambrill, *supra* note 2, 146 U.S.App.D.C. ——, 449 F.2d 1148, which does reverse the finding of an independent source, cites no other such appellate reversals.

31. *Accord*, United States v. York, *supra* note 21, 138 U.S.App.D.C. 197, 426 F.2d 1191. The court remanded in *York*, stating that the record was "deficient at too many points to enable us to proceed with confidence * * *." *Id.* at 199, 426 F.2d at 1193. The court particularly decried the lack of a "careful evidentiary exploration". *Id.* In Hawkins v. United States, *supra* note 24, 137 U.S.App.D.C. at 104, 420 F.2d at 1307, the court noted

such a record in this case and there may be facts as yet unexplored or undeveloped which will substantiate Gaines' certainty that he had an independent source. We have therefore decided to remand the case for further inquiry into those factors outlined in *Wade* which may indicate the existence of an independent source for Gaines' lineup and in-court identifications of Estes, with particular emphasis on Gaines' opportunity to observe the robber he identified as Estes during the criminal act.[32] It is of course unfortunate that several years have elapsed since the robbery and the witness' memory may be less than complete. However, the decision to remand rather than to reverse Estes conviction[33] is made because the pretrial inquiry halted with Gaines' testimony that he was sure he remembered Estes from the robbery. We cannot be completely certain that all the circumstances relevant to this question are now before us.

## IV.

### Lane's Identification of Johnson's Photograph

■ Appellant Johnson contends that the testimony of Mr. Lane concerning his identification of a color photograph of Johnson was admitted in error[34] because the photograph was obtained in violation of the defendant's Fourth Amendment rights. Johnson himself sought to raise this objection in the absence of the jury but the inquiry was closed without development of the facts.

From the record it appears that Johnson visited a local police station on July 4, 1968, in search of his friend Estes. The police took a color photograph of Johnson during this visit, the same photograph later showed to Lane and mentioned by him at trial. The warrant for Johnson's arrest was not issued until July 6, subsequent to Johnson's visit to the police station, and it appears that the police did not have probable cause to arrest him until after the color photograph was taken.

Johnson's contention is that although he appeared at the police station voluntarily, the photograph was taken without his consent—that, in fact, the police coerced him to pose for the photograph and manipulated his presence at the station into a form of illegal detention. If these facts are true, the photographic seizure of his person during an involuntary detention may run afoul of the Fourth Amendment's proscription against unreasonable searches and seizures.

---

the trial judge's "careful questioning along the guidelines suggested in *Wade*" and proceeded to review and uphold the trial court's finding.

32. The importance of this factor is consistently emphasized in appellate review of a finding of an independent source, *see* Williams v. United States, *supra* note 25, 133 U.S.App.D.C. at 187, 409 F.2d at 473; United States v. Kemper, *supra* note 25, 140 U.S.App.D.C. at 50, 433 F.2d at 1156, 1157; although there is some question whether an ample opportunity for observation alone would suffice to justify such a finding. Hawkins v. United States, *supra* note 24, 137 U.S.App.D.C. at 105, 420 F.2d at 1308.

33. As stated previously, when identification testimony is the only evidence linking a defendant to a crime, the erroneous admission of such testimony is not likely to be harmless error. Gaines was one of three witnesses who testified against Estes and it cannot be said beyond a reasonable doubt that the whole of his testimony did not contribute to the jury's verdict. Harrington v. California, *supra* note 2, 395 U.S. 250, 89 S.Ct. 1726; Chapman v. California, *supra* note 2, 383 U.S. 18, 87 S.Ct. 824.

34. Mr. Lane's testimony was heard in its entirety by the trial judge in the absence of the jury, after which the judge ruled that Lane's identification of the color photograph and his in-court identification of Johnson were admissible. At trial, Mr. Lane first mentioned his identification of the photograph in an unresponsive reply to a question posed by defense counsel. The defense did not pursue this response, but the photographic identification was then covered in detail by the Government in re-direct examination. The appellant now contends that all mention of his photograph should have been excluded.

In Davis v. Mississippi,[35] the Supreme Court held that brief detentions, for the sole purpose of obtaining fingerprint evidence, may be subject to this Fourth Amendment proscription regardless of whether they occur in the investigatory or accusatory stage of the prosecution, and held the prints obtained during Davis' involuntary detention subject to the exclusionary rule.

The Court declined to formulate a general rule covering all brief detentions to obtain fingerprints, but based its ruling solely on the facts of Davis' detention. The Court noted that there was not probable cause to arrest him at the time he was detained; that Davis did not accompany the police willingly nor submit to the fingerprinting voluntarily; that no warrant had been obtained for his arrest; and that he was detained twice and interrogated as well. These circumstances, the Court found, made the seizure of his fingerprints unreasonable.

Whether the facts in Johnson's case will cross the threshhold established in *Davis* is a determination which may be made only after a full inquiry into the facts. Whether or not Johnson consented to being photographed is of course of major importance. His attorney reported that Johnson stated "he had little choice but to do it." Such a statement does not convey the defendant's voluntary agreement free from duress or coercion. *Cf.* Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649 (1951). Consideration of this question must be deferred until the facts have been fully developed in a hearing in the District

Court. *See* Morales v. New York, 396 U.S. 102, 90 S.Ct. 291, 24 L.Ed.2d 299 (1969).

On remand, the court should inquire into the circumstances of Johnson's presence in the police station [36] and the conditions under which his photograph [37] was taken. Once again, if error was committed in the admission of Lane's photographic identification of Johnson, the gravity of that error must be evaluated in light of the entire case against the defendant and the rule outlined in Harrington v. California and Chapman v. California.

■ We have considered the appellants' other contentions in the event that they might arise in a subsequent trial ordered by the District Court. We find that the peaceful police entry into Estes' home during the day to search for him under the aegis of a valid arrest warrant is permissible under our recent *en banc* decision, Dorman v. United States,[38] although admittedly the police were not in "hot pursuit" of Estes since three days had passed since the day of the robbery. In the course of their search for Estes, the police officers found a pistol within plain view inside a closet, an area in which a person might conceal himself. Within these limited circumstances, and absent any showing that the police engaged in a general search of the home, the pistol was properly admitted into evidence at trial.

Appellants' other contentions are without merit. The cases are remanded to the District Court for further hearing as outlined in Parts II, III and IV of this opinion.

35. 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed. 2d 676 (1969).

36. Bearing in mind the Supreme Court's statement in Terry v. Ohio that "[i]t must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968).

37. Whether the photographing of an individual is sufficiently akin to the taking of his fingerprints so that any use as evi-

dence of a photograph obtained during an illegal detention is subject to the exclusionary rule also remains to be decided. The Supreme Court in *Davis* specifically rejected the argument that fingerprints should be treated differently from any other type of tangible evidence as regards the exclusionary rule. *Cf.* Bynum v. United States, 104 U.S.App.D.C. 368, 262 F.2d 465 (1958).

38. 140 U.S.App.D.C. 313, 435 F.2d 385 (1970).