Katie RELF et al., Plaintiffs,

v.

Caspar W. WEINBERGER et al., Defendants.

NATIONAL WELFARE RIGHTS ORGANIZATION, Plaintiff,

v.

Caspar W. WEINBERGER et al., Defendants.

Civ. A. Nos. 73–1557, 74–243.

United States District Court, D. Columbia.

March 15, 1974.

and projects funded by the Department's Public Health Service and its Social and Rehabilitation Service. 39 Fed.Reg. 4730–34 (1974). Plaintiffs are the National Welfare Rights Organization (NWRO), suing on behalf of its 125,000 members, and five individual women, proceeding by class action on behalf of all poor persons subject to involuntary sterilization under the challenged regulations. Defendants are the Secretary of HEW, under whose authority the regulations were issued, 42 U.S.C. § 216, and two high-level HEW officials charged with the administration of federal family planning funds.

The issues have been fully briefed and argued, and are now before the Court on separate motions for summary judgment by the respective plaintiffs and on the Secretary's motion for dismissal or summary judgment. Declaratory and injunctive relief is sought in both cases. The effective date of the regulations has been voluntarily deferred by the Secretary at the Court's request until March 18, 1974, to facilitate resolution of these issues.

Congress has authorized the funding of a full range of family planning services under two basic procedures. The Public Health Service administers federal grants to state health agencies and to public and private projects for the provision of family planning services to the poor, 42 U.S.C. §§ 300 et seq., 708(a), and the Social and Rehabilitation Service provides funds for such services under the Medicaid and Aid to Families of Dependent Children programs, 42 U.S.C. §§ 601 et seq., 1396 et seq.

Although there is no specific reference to sterilization in any of the family planning statutes nor in the legislative history surrounding their passage,[1] the Secretary has considered sterilization to fall within the general statutory scheme and Congress has been made aware of

Joseph J. Levin, Jr., Morris S. Dees Jr., Montgomery, Ala., for Katie Relf and others.

Stuart J. Land, Leonard H. Becker, Arnold & Porter, Charles R. Halpern, Washington, D. C., for Nat. Welfare Rights Organization.

Thomas G. Corcoran, Jr., Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM OPINION

GESELL, District Judge.

These two related cases, which have been consolidated with the consent of all parties, challenge the statutory authorization and constitutionality of regulations of the Department of Health, Education and Welfare (HEW) governing human sterilizations under programs

---

1. Congress merely specified that it intended to support the "full range of family planning services." H.R.Rep.No.91–1472, 91st Cong., 2d Sess. 10 (1970), U.S.Code Cong. & Admin.News 1970, p. 5068. Only abortion has been specifically excluded. 42 U.S.C. § 300a–6.

this position. But until recently, there were no particular rules or regulations governing the circumstances under which sterilizations could be funded under these statutes.

Sterilization of females or males is irreversible. The total number of these sterilizations is clearly of national significance. Few realize that over 16 percent of the married couples in this country between the ages of 20 and 39 have had a sterilization operation.[2] Over the last few years, an estimated 100,000 to 150,000 low-income persons have been sterilized annually under federally funded programs. Virtually all of these people have been adults: only about 2,000 to 3,000 per year have been under 21 years of age and fewer than 300 have been under 18. There are no statistics in the record indicating what percentage of these patients were mentally incompetent.

Although Congress has been insistent that all family planning programs function on a purely voluntary basis,[3] there is uncontroverted evidence in the record that minors and other incompetents have been sterilized with federal funds and that an indefinite number of poor people have been improperly coerced into accepting a sterilization operation under the threat that various federally supported welfare benefits would be withdrawn unless they submitted to irreversible sterilization.[4] Patients receiving Medicaid assistance at childbirth are evidently the most frequent targets of this pressure, as the experiences of plaintiffs Wàters and Walker illustrate. Mrs. Waters was actually refused medical assistance by her attending physician unless she submitted to a tubal ligation after the birth. Other examples were documented.

When such deplorable incidents began to receive nationwide public attention due to the experience of the Relf sisters in Alabama, the Secretary took steps to restrict the circumstances under which recipients of federal family planning funds could conduct sterilization operations. On August 3, 1973, the Department published in the Federal Register a notice of Guidelines for Sterilization Procedures under HEW Supported Programs. 38 Fed.Reg. 20930 (1973). The notice directed that the policies set forth in the guidelines be implemented through regulations to be issued by the departmental agencies administering programs which provide federal financial assistance for family planning services. Notices of proposed rule making were duly published in the Federal Register on September 21, 1973. 38 Fed. Reg. 26459 (1973). Interested persons were given an opportunity to participate in the rule making by submitting comments on the proposed regulations. Approximately 300 comments, including those of plaintiff NWRO, were received and reviewed by the Department. The final regulations here under attack were issued on February 6, 1974.

These regulations provide that projects and programs receiving PHS or SRS funds, whether for family planning or purely medical services,[5] shall neither perform nor arrange for the performance of a nontherapeutic sterilization unless certain procedures are carried out. These vary depending upon whether the patient is, under state law, a legally competent adult, a legally competent person under the age of 18, a legally incompetent minor, or a mental incompetent. Briefly, they are as follows:

(1) Legally competent adults must give their "informed consent" to sterili-

---

2. Affidavit of Dr. Louis M. Hellman, Deputy Assistant Secretary for Population Affairs, Department of Health, Education and Welfare.

3. *See* p. 1202 *infra.*

4. Affidavits of Dr. Bernard L. Rosenfeld and Dr. Sidney M. Wolfe.

5. In addition to those statutes listed above (*see* pp. 1198, 1199 *supra*) which specifically mention family planning services, the regulations at issue also apply to medical grants and payments under 42 U.S.C. §§ 242h, 246 (d), 246(e), and 801 et seq.

zation. Such consent must be evidenced by a written and signed document indicating, *inter alia*, that the patient is aware of the benefits and costs of sterilization and of the fact that he may withdraw from the operation without losing federal benefits. 42 CFR § 50.-202(f); 45 CFR § 205.35(a)(2)(ii).

(2) Legally competent persons under the age of 18 must also give such written consent. In these situations, a .special Review Committee of independent persons from the community must also have determined that the proposed sterilization is in the best interest of the patient, taking into consideration (a) the expected mental and physical impact of pregnancy and motherhood on the patient, if female, or the expected mental impact of fatherhood, if male, and (b) the expected immediate and long-term mental and physical impact of sterilization on the patient. 42 CFR § 50.-206(a); 45 CFR § 205.35(a)(4)(i). The Review Committee must also (a) review appropriate medical, social and psychological information concerning the patient, including the age of the patient, alternative family planning methods, and the adequacy of consent, and (b) interview the patient, both parents of the patient (if available), and such other persons as in its judgment will contribute pertinent information. 42 CFR § 50.206(b)(1, 2); 45 CFR § 205.35 (a)(4)(i)(A, B). However, parental consent is not required. 42 CFR § 50.-203(c); 45 CFR § 205.35(a)(5)(ii).

(3) Legally incompetent minors must be afforded the above safeguards, and, in addition, a state court of competent jurisdiction must determine that the proposed sterilization is in the best interest of the patient. 42 CFR § 50.203(c); 45 CFR § 205.35(a)(1)(iv)(A, B).

(4) The sterilization of mental incompetents of all ages must also be sanctioned by a Review Committee and a court. However, personal consent is not required—it is enough that the patient's "representative" requests sterilization. 42 CFR § 50.203(a); 45 CFR § 205.-35(a)(1). Although defendants interpret the term "representative" to mean a person empowered under state law to consent to the sterilization on behalf of the patient, no such definition appears in the regulations themselves.

Plaintiffs do not oppose the voluntary sterilization of poor persons under federally funded programs. However, they contend that these regulations are both illegal and arbitrary because they authorize *involuntary* sterilizations, without statutory or constitutional justification. They argue forcefully that sterilization of minors or mental incompetents is necessarily involuntary in the nature of things. Further, they claim that sterilization of competent adults under these regulations can be undertaken without insuring that the request for sterilization is in actuality voluntary. The Secretary defends the regulations and insists that only "voluntary" sterilization is permitted under their terms.

Before considering these issues, the Court must first dispose of several preliminary objections raised by defendants, who assert that the Court is without authority to resolve this controversy. They challenge the standing of all of the plaintiffs, but NWRO clearly has standing to bring this action since it has an organizational interest in the rights of its welfare recipient members, many of whom may be directly subject to involuntary sterilizations as authorized by the challenged regulations. Sierra Club v. Morton, 405 U.S. 727, 734–735, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); National Welfare Rights Organization v. Finch, 139 U.S.App.D.C. 46, 429 F.2d 725, 734–735 (1970). Moreover, although the Court ruled in prior proceedings that four of the five Relf plaintiffs lack standing because they have already been sterilized, Katie Relf is still a member of the class of persons subject to federally funded sterilization, and the Court finds that she can adequately represent that class for the purposes of relief under Rule 23(b)(2) of the Federal Rules of Civil

Procedure. The fact that she has never requested sterilization is patently irrelevant. She challenges the regulations primarily on the ground that they authorize involuntary sterilization. Indeed, an attempt was actually made under federal auspices to sterilize Katie Relf against her will, which she successfully resisted by locking herself in her room.

■ Defendants also suggest that the challenged regulations do not actually "cause" the asserted injuries, since they are restrictions upon sterilizations subject to state law rather than authorizations for an otherwise illegal operation. They conclude that if plaintiffs believe that the regulations themselves will cause injury, they must wait until such injuries occur before bringing this action. These contentions have no legal or realistic merit. The regulations authorize sterilizations with federal funds and thus interject the Government into an area where its presence cannot be excused simply because sterilizations might also have been performed with private or state funds. Nor are the claims premature. The Supreme Court has repeatedly stated that the right of privacy entails the right of the individual "to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child." Eisenstadt v. Baird, 405 U.S. 438, 453, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349 (1972). See also Cleveland v. La Fleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). Involuntary sterilizations directly threaten that right, Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), and plaintiffs correctly contend that the challenged regulations authorize such sterilizations. Under these circum-

stances it is well established that one does not have to forfeit fundamental rights before he or she may complain, so long as the threat is real and immediate, as it is here. Cf. Gooding v. Wilson, 405 U.S. 518, 521, 92 S.Ct. 1103, 31 L. Ed.2d 408 (1973); Abbott Laboratories v. Gardner, 387 U.S. 136, 149, 87 S.Ct. 1507, 13 L.Ed.2d 681 (1967).

The Court must therefore proceed to the merits. While plaintiffs invoke both statutory and constitutional principles, relying on the Fourth, Fifth, Sixth, Eighth and Ninth Amendments to the Constitution in support of their position, the issues tendered may be readily resolved simply by resort to the underlying statutes. Accordingly, no occasion exists to consider the related constitutional claims.

■ For the reasons developed below, the Court finds that the Secretary has no statutory authority under the family planning sections [6] of the Social Security or Public Health Services Acts to fund the sterilization of any person incompetent under state law to consent to such an operation, whether because of *minority or of mental deficiency.* It also finds that the challenged regulations are arbitrary and unreasonable in that they fail to implement the congressional command that federal family planning funds not be used to coerce indigent patients into submitting to sterilization. In short, federally assisted family planning sterilizations are permissible only with the voluntary, knowing and uncoerced consent of individuals competent to give such consent. This result requires an injunction against substantial portions of the proposed regulations and their revision to insure that all sterilizations funded under the family planning sections are voluntary in the full sense of that term and that sterilization of incompetent minors and adults is prevented.

---

6. Sterilizations required by bona fide medical necessity could presumably be funded by other HEW programs. See, e. g., note on pp. 1199–1200 *supra.* The Court need not reach the issue of what safeguards are required under such programs.

The dispute with regard to minors and mental incompetents centers around two aspects of the statutory language. On the one hand, Congress included in every section mentioning family planning a requirement that such services be voluntarily requested. 42 U.S.C. §§ 300a–5, 602(a)(15), 708(a), 1396d(a)(4). On the other hand, these sections purport to offer family planning services to all poor people and two of them specifically include minors. 42 U.S.C. §§ 602(a)(15), 1396d(a)(4). The Secretary argues that this juxtaposition indicates that Congress intended that minors personally and incompetents through their representatives would be able to consent to sterilization under these sections. That conclusion is unwarranted.

Although the term "voluntary" is nowhere defined in the statutes under consideration, it is frequently encountered in the law. Even its dictionary definition assumes an exercise of free will and clearly precludes the existence of coercion or force. *Webster's Second New International Dictionary* 2858 (2d ed. 1961). *See also* United States v. Johnson, 147 U.S.App.D.C. 31, 452 F.2d 1363, 1372 (1971); United States v. Thompson, 356 F.2d 216, 220–221 (2d Cir. 1965), cert. denied, 384 U.S. 964, 86 S. Ct. 1591, 16 L.Ed.2d 675 (1966). And its use in the statutory and decisional law, at least when important human rights are at stake, entails a requirement that the individual have at his disposal the information necessary to make his decision and the mental competence to appreciate the significance of that information. *See, e. g.,* Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L. Ed.2d 824 (1960); Elder v. Crawley Book Machinery Co., 441 F.2d 771, 773 (3d Cir. 1971); Pearson v. United States, 117 U.S.App.D.C. 52, 325 F.2d 625, 626–667 (1963).

No person who is mentally incompetent can meet these standards, nor can the consent of a representative, however sufficient under state law, impute voluntariness to the individual actually undergoing irreversible sterilization. Minors would also appear to lack the knowledge, maturity and judgment to satisfy these standards with regard to such an important issue, whatever may be their competence to rely on devices or medication that temporarily frustrates procreation. This is the reasoning that provides the basis for the nearly universal common law and statutory rule that minors and mental incompetents cannot consent to medical operations, *see* Restatement of Torts § 59 (1934), or be held to contractual obligations, *see* 43 C.J.S. Infants § 71 et seq.; 17 C.J.S. Contracts § 133.[7]

The statutory references to minors and mental incompetents do not contradict this conclusion, for they appear only in the context of family planning services in general. Minors, for example, are not legally incompetent for all purposes, and many girls of child-bearing age are undoubtedly sufficiently aware of the relevant considerations to use temporary contraceptives that intrude far less on fundamental rights. However, the Secretary has not demonstrated and the Court cannot find that Congress deemed such children capable of voluntarily consenting to an irreversible operation involving the basic human right to procreate. Nor can the Court find, in the face of repeated warnings concerning voluntariness, that Congress authorized the imposition of such a serious deprivation upon mental incompetents at the will of an unspecified "representative."

7. Most of the state sterilization statutes brought to the attention of the Court appear to have been passed for eugenic rather than family planning purposes and make no pretense that the sterilization of minors or mental incompetents can be considered "voluntary." *See, e. g.,* Ind.Stat.Ann. §§ 22–1601 to 22–1618 (1964), IC 1971, 16–13–13–1 to 16–13–15–6; Iowa Code Ann. §§ 145.1–145.22 (1972); N.H.Rev.Stat.Ann. §§ 174:1–174:14 (1964).

The regulations also fail to provide the procedural safeguards necessary to insure that even competent adults voluntarily request sterilization. Plaintiffs would require an elaborate hearing process prior to the operation to remedy this problem. The Secretary, however, has determined that the consent document procedure set forth in the existing regulations is adequate in most instances to insure a knowledgeable decision, and the Court finds that this determination is not unreasonable. In one respect, however, the consent procedure must be improved. Even a fully informed individual cannot make a "voluntary" decision concerning sterilization if he has been subjected to coercion from doctors or project officers.[8] Despite specific statutory language forbidding the recipients of federal family planning funds to threaten a cutoff of program benefits unless the individual submits to sterilization[9] and despite clear evidence that such coercion is actually being applied,[10] the challenged regulations contain no clear safeguard against this abuse. Although the required consent document must state that the patient can *withdraw* his consent to sterilization without losing other program benefits, there is nothing to prohibit the use of such coercion to extract the initial consent.

In order to prevent express or implied threats, which would obviate the Secretary's entire framework of procedural safeguards, and to insure compliance with the statutory language, the Court concludes that the regulations must also be amended to require that individuals seeking sterilization be orally informed at the very outset that no federal benefits can be withdrawn because of a failure to accept sterilization. This guarantee must also appear prominently at the top of the consent document already required by the regulations. To permit sterilization without this essential safeguard is an unreasonable and arbitrary interpretation of the congressional mandate.

Since these conclusions are based on statutory rather than constitutional grounds, the Court need not reach the question of whether involuntary sterilization *could* be funded by Congress. It is sufficient to note that there is no indication whatever that Congress intended to do so under the existing legislation, and such an intent will not be lightly assumed in light of the fundamental interests at stake. The present statutes were passed to facilitate only voluntary family planning and thus to assist the individual in the exercise of his voluntary right to govern his own procreation. Involuntary sterilization is not only distinguishable from these services, but diametrically so. It invades rather than compliments the right to procreate.

This controversy has arisen during a period of rapid change in the field of birth control. In recent years, through the efforts of dedicated proponents of family planning, birth control information and services have become widely available. Aided by the growing acceptance of family planning, medical science has steadily improved and diversified the techniques of birth prevention and control. Advancements in artificial insemination and in the understanding of genetic attributes are also affecting the decision to bear children. There are even suggestions in the scientific literature that the sex of children may soon be subject to parental control. And over this entire area lies the specter of overpopulation, with its possible impact upon the food supply, interpersonal relations,

---

8. See p. 1202 *supra.*

9. "The acceptance by any individual of family planning services . . . provided through financial assistance under this title (whether by grant or contract) shall be voluntary and shall not be a prerequisite to eligibility for or receipt of any other service or assistance from, or to participation in, any other program of the entity or individual that provided such service or information." 42 U.S.C. § 300a–5. *See also* 42 U.S.C. §§ 602(a)(15), 708(a).

10. See p. 1199, *supra.*

privacy, and the enjoyment of our "in-alienable rights."

Surely the Federal Government must move cautiously in this area, under well-defined policies determined by Congress after full consideration of constitutional and far-reaching social implications. The dividing line between family planning and eugenics is murky. And yet the Secretary, through the regulations at issue, seeks to sanction one of the most drastic methods of population control—the involuntary irreversible sterilization of men and women—without any legislative guidance. Whatever might be the merits of limiting irresponsible reproduction, which each year places increasing numbers of unwanted or mentally defective children into tax-supported institutions, it is for Congress and not individual social workers and physicians to determine the manner in which federal funds should be used to support such a program. We should not drift into a policy which has unfathomed implications and which permanently deprives unwilling or immature citizens of their ability to procreate without adequate legal safeguards and a legislative determination of the appropriate standards in light of the general welfare and of individual rights.

The foregoing shall constitute the Court's findings of fact and conclusions of law. The various motions for summary judgment are granted in part as indicated in the attached Order, and the Secretary's motion to dismiss is denied. Each party shall bear its own costs and attorneys' fees.

## ORDER

In accordance with the Court's findings of fact and conclusions of law set forth in a Memorandum Opinion filed this 15th day of March, 1974, it is hereby

Ordered that the above-captioned actions are consolidated for all purposes; and it is further

Ordered that plaintiff Katie Relf may prosecute her claims as a class repre-sentative under Rule 23(b)(2) of the Federal Rules of Civil Procedure on behalf of all poor persons subject to involuntary sterilization under programs or projects which receive funds administered by the Public Health Service or the Social and Rehabilitation Service of the United States Department of Health, Education and Welfare; and it is further

Declared that the family planning sections of the Public Health Service Act (42 U.S.C. §§ 300 et seq., 708(a)(3)) and of the Social Security Act (42 U.S.C. §§ 602(a)(15), 1396d(a)(4)(C)) do not authorize the provision of federal funds for the sterilization of any person who (1) has been judicially declared mentally incompetent, or (2) is in fact legally incompetent under the applicable state laws to give informed and binding consent to the performance of such an operation because of age or mental capacity; and it is further

Ordered that defendants, their successors, subordinates, agents and employees are permanently enjoined from providing funds under the aforesaid family planning sections for the sterilization of any person who (1) has been judicially declared mentally incompetent, or (2) is in fact legally incompetent under the applicable state laws to give informed and binding consent to the performance of such an operation because of age or mental capacity; and it is further

Declared that the Sterilization Restrictions regulations issued by the United States Department of Health, Education and Welfare on February 6, 1974 (39 Fed.Reg. 4730–34 (1974)) are arbitrary and unreasonable in that they authorize the provision of federal funds under the aforesaid family planning sections for the sterilization of a legally competent person without requiring that such person be advised at the outset and prior to the solicitation or receipt of his or her consent to such an operation that no benefits provided by programs or projects receiving federal funds may be withdrawn or withheld by reason of his

or her decision not to be sterilized, and without further requiring that such advice also appear prominently at the top of the consent document mentioned in those regulations, and it is further

Ordered that defendants shall promptly amend the aforesaid Sterilization Restrictions regulations to bring them into conformity with this Order; and it is further

Ordered that plaintiffs' motions for summary judgment are granted in the above respects and denied in all other respects; and it is further

Ordered that defendants' motion to dismiss is denied, and their motion in the alternative for summary judgment is granted in the above respects and denied in all other respects; and it is further

Ordered that each party shall bear its own costs and attorneys' fees.