367 So.2d 779 (1979)
STATE of Louisiana
v.
Tommie Lee MORGAN.
No. 62797.
Supreme Court of Louisiana.
January 29, 1979.
*780 Lee E. Ineichen, Jr., Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
*781 SUMMERS, Chief Justice.[*]
Defendant Tommie Lee Morgan was charged with and convicted of first degree murder in violation of Article 30 of the Criminal Code. After a sentencing hearing the jury recommended life imprisonment, and he was sentenced accordingly. On this appeal four assignments of error are urged for reversal of the conviction and sentence.
Accompanied by Wilfred Davis and Eddie Lee Johnson defendant Morgan entered Mc-Donald's restaurant on Canal Street in New Orleans about 8:35 on the evening of January 10, 1978. The three men inquired about possible employment and asked to speak to the Manager, Warren Grillette. When the Manager came forth defendant asked him for a job. The Manager replied they were not hiring at this time, but would be next week, suggesting that defendant return at that time. Defendant then demanded a job "now" and pulled his gun. Then, according to the interrogation of Christine Murray, an employee,
A. ". . . When he pulled out the gun Warren [Grillette the victim] pushed the gun over, and said, "Get that plaything out of here," and Warren pushed him on the side. And I said "Warren, that's not no play gun." So when he pulled the gun out, and his partners said, "What's wrong with you"
Q. Who said, "What's wrong?"
A. His two partners did, hollered at him.
Q. And then what happened?
A. After that he just shot Warren."
Warren expired in Charity Hospital about six weeks later from the shot in his chest.
Assignment 1: Defendant contends that the trial judge erroneously allowed the prosecutor to impeach the testimony of defense witness Donald Gordon on cross-examination by use of a prior inconsistent statement.
During the trial Donald Gordon was called as a defense witness. On direct examination he testified that on the night of the shooting, January 10, 1978, he attended a party on Martin Luther King Boulevard or Erato Street, at which defendant was present. Defendant was drinking beer and became somewhat intoxicated; his talk was slurred as he left the party to go home and lay down. Eddie Lee Johnson was also at the party and had a pistol at the time. Gordon had never seen defendant with a pistol.
On cross-examination the prosecutor asked Donald Gordon whether he remembered giving a statement to Detective Ronald Brink and Pat Fricke around 8:30 on the evening of January 21, 1978, while he was in parish prison. At this point defense counsel objected that the statement had not been brought into question. The trial judge sustained the objection and when the prosecutor inquired if he could impeach Gordon with the statement the trial judge ruled that he would permit impeachment if the proper predicate was established. Defense counsel then objected that the State could not impeach its own witness, to which the trial judge responded that the defense, not the State, had called the witness Gordon to the stand.
The prosecutor then interrogated Gordon, establishing that he had given a statement to Detectives Brink and Fricke around 8:30 p. m. on January 21, 1978, in the parish prison. In that statement Gordon said that he saw defendant Morgan, Davis and Johnson on the night of the shooting. At that time they said they were going to rob a McDonald's restaurant. Later that night Gordon saw them again and "they said they robbed the man at McDonald's and they shot him," and at the party that night he "heard Tommy say that he shot a man in McDonald's."
Defense counsel argues that the impeachment was beyond the permissible scope of cross-examination because there had been no mention of the written statement on direct examination, and that a proper foundation had not been laid for the prior contradictory statement.
*782 Neither of these defense contentions has merit. The scope of cross-examination is not limited to matters referred to on direct examination. By statute in this State when a witness has been sworn and has testified to any single fact in his examination in chief he may be cross-examined upon the whole case. La.Rev.Stat. 15:280; State v. Weathers, 320 So.2d 895 (1975); State v. George, 346 So.2d 694 (La.1977); State v. Polk, 258 La. 738, 247 So.2d 853 (1971); State v. Richardson, 258 La. 62, 245 So.2d 357 (1971).
The credibility of a witness may be impeached by proof of any statement made by him contradictory to his testimony if he is first asked whether he has made such a statement, and his attention is called to the time, place and circumstances, and to the person to whom the prior statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such a statement, evidence that he did make it is admissible. La.Rev.Stat. 15:493; State v. Williams, 362 So.2d 530 (La.1978); State v. Klein, 351 So.2d 1158 (La.1977).
In the instant case the proper foundation for the impeachment of the witness was established, and there was no error in the ruling of the trial judge allowing the prosecutor to impeach the witness' testimony.
Assignment 2: Defendant contends that the trial judge erred when the District Attorney was allowed to introduce evidence of a photographic lineup when the lineup was highly suggestive and led to an irreparable mistaken in-court identification prejudicial to defendant.
The photographic identification was unduly suggestive, according to the defense contention, because only four photographs were used, when ten should have been exhibited to the witnesses. In addition photographs of more than one suspect were used. It is further submitted that there was no adequate independent basis for the in-court identification. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); United States v. Johnson, 147 U.S.App.D.C. 31, 452 F.2d 1363 (1971) and United States v. Boston, 508 F.2d 1171 (2d Cir. 1974), are relied upon to support defendant's contention.
Relying upon the principles announced in Wade and Stovall supra, defendant filed a motion in advance of trial to suppress the identification. A hearing was held on that motion and, finding no taint in the photographic lineup, the trial judge denied the motion to suppress the photographic identification of the defendant.
The facts developed at the motion to suppress and at the trial show that on January 21, 1978, eleven days after the shooting, Christine Murray, a McDonald's employee, who was present when Grillette was shot, was shown a group of eight photographs by Detective Fricke. She was asked if she could identify anyone in connection with the January 10 shooting. Nothing else was said until she identified the photo of Morgan as that of the trigger man.
On a separate occasion on the same date Avis Brock, another McDonald employee who was present at the shooting, identified the photo of Morgan from the same eight photos as the person who shot Grillette, but her identification was tentative.
After a review of the eight photographs, the trial judge found no vast difference in the subjects which would suggest to these witnesses the identity of the defendant. Our review of the photographs leads to the same conclusion.
United States v. Boston, 508 F.2d 1171 (2d Cir. 1974) does not hold, as appellant claims, that at least ten photographs are essential to a valid lineup. On the contrary, the Second Circuit stated that "there is no magic number."
Nor does United States v. Johnson, 147 U.S.App.D.C. 31, 452 F.2d 1363 (1971), support the defense contention that if photos of two suspects are in the lineup it is unduly suggestive. As the opinion is understood, such a procedure is a common practice, *783 not inherently prejudicial if a sufficient number of stand-ins are used.
No exact detailed criteria for a legitimate photographic lineup is established. Except for the broad outlines found in the cases, the fundamental rule is that each case must be considered on a careful analysis of its own facts. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).
Based upon the foregoing there was no error in the ruling of the trial judge admitting evidence of the photographic lineup.
Moreover, we are satisfied that there was an adequate independent basis to support the in-court identification notwithstanding the photographic identification.
Each of the McDonald's employees who identified defendant witnessed the shooting in a well-lighted room. Each spoke to defendant. Each came in close contact with defendant. Each had ample opportunity (five to fifteen minutes) to view defendant as he entered the restaurant the first time and returned a second time.
Assignment 3: It is the defense contention that the Assistant District Attorney prosecuting this case went beyond the trial evidence in his rebuttal argument to the jury.
The prosecutor's remarks which are the basis of this contention are statements that defendant shot Grillette because he "didn't give him money", inferring that robbery was the motive for the killing. The argument is that there was no testimony on the part of Christine Murray that defendant robbed or attempted to rob anyone, the only evidence being that he asked for a job. The only evidence concerning a robbery was that which the prosecutor used when he introduced Donald Gordon's prior statement to impeach his testimony. This statement used to impeach, the argument continues, is not evidence, and goes only to the witness' credibility.
Defense counsel made no objection to the controverted statement at the time, but did object later to other references to the statement. At that time the judge admonished the prosecutor to refrain from references to anything not in evidence, nevertheless defense counsel moved for a mistrial, which the judge denied. He then asked defense counsel if he wanted to have him instruct the jury to disregard the controverted remarks, but defense counsel elected to stand on his motion for a mistrial.
The motion for mistrial is without merit. The remarks of the prosecutor were based upon the evidence. Toward the end of Donald Gordon's testimony, while he was being cross-examined by the State, he was asked, "you testified previously that Tommy (sic) Lee Morgan said he shot the man at Mc-Donald's because the man wouldn't give him the money, correct?" Gordon replied, "Yes." Thereafter on redirect examination, defense counsel asked Gordon, "Now, after he said he had done the shooting, what, if anything, did Tommy (sic) Lee say to you about why he had donesaid he had done it?", and Gordon answered, "Because the guy didn't give him the money."
Assignment 4: Appellant Morgan took the stand in his own defense. He testified that he went to McDonald's on the night of the shooting with Eddie Lee Johnson and Wilfred Davis, and that Johnson pulled a gun and shot Grillette. During cross-examination by the prosecutor, this colloquy occurred:
"Q. You all [referring to Eddie Lee Johnson and Wilfred Davis] pal around together a lot huh?
A. Not that much.
A. No? You're in that picture, you're in the McDonald's together, you're at the party togetheryou don't pal around that much?
A. (No response).
Q. You commit armed robberies together and murders together, don't you?
BY MR. INEICHEN (defense counsel)
Your honor, we object.
BY THE COURT:
Sustained.
*784 The defense assignment of error simply alleges prejudice. For the first time, in brief to this Court, he argues that he was entitled to a mistrial under Article 770 of the Code of Criminal Procedure.
The contention is not well-founded. The motion for a mistrial to which defendant is entitled when the prosecutor refers before the jury to "another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible" is not available to this defendant.
When defendant's objection was sustained, therefore, the relief he sought was granted. Moreover, this Court has held on a number of occasions that it is necessary to lodge a contemporaneous objection to be entitled to a mistrial. State v. Sullivan, 352 So.2d 649 (La.1977); failure to make the motion is considered a waiver of the error, State v. Ervin, 340 So.2d 1379 (La.1976); State v. Pearson, 336 So.2d 833 (La.1976).
Furthermore, taken in the context of the trial evidence and the testimony of the witness the prosecutor's question was relevant and admissible.
For the reasons assigned, the conviction and sentence are affirmed.
CALOGERO, J., dissents and assigns reasons.
DENNIS, J., concurs and assigns reasons.
CALOGERO, Justice, dissenting.
I disagree with the majority's consideration of only four of defendant's five assignments of error and its apparent conclusion that assignment five was abandoned because neither briefed nor argued. Although there is no specific argument of the assignment in defendant's brief and there was no oral argument because the case was submitted, the recitation of the assignment itself appears in brief, is self-explanatory and adequately presents this issue for the Court's review.
Furthermore, that assignment (five), which takes issue with the district attorney's questioning the defendant as to his failure to make an exculpatory statement after being taken into custody, has merit for reasons I expressed in State v. Procell, La., 365 So.2d 484. I would reverse this defendant's conviction and order a new trial.
DENNIS, Justice, concurring.
I respectfully concur, disagreeing with the treatment of assignment of error number four. The reference to "armed robberies and murders" was not reversible error only because within its context it alluded to the crime for which defendant was on trial and not to "other crimes." Additionally, it should be noted that assignment of error number five, if it had not been abandoned, would have presented reversible error based upon a violation of defendant's privilege against self-incrimination.
NOTES
[*] Chief Judge L. Julien Samuel participated in this decision as Associate Justice Ad Hoc sitting in the place of Chief Justice Sanders, retired.